JOURNAL PUBLISHING COMPANY, A CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 756.   Promulgated March 27, 1944.

*Thomas B. Stoel, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: May the petitioner in computing its excess profits tax liability, and therefore in the computation of its "borrowed invested capital," consider as such its contractual liability to its competitor, to the extent of 50 percent thereof, under section 719 (a) of the Internal Revenue Code, as amended by section 201 of the Second Revenue Act of 1940?[1]   The parties agree that the 50 percent was, in the taxable year, based upon $483,770.48.   The amount so computed is eliminated by the deficiency notice, with the explanation that it was not evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, as required by section 719.

Petitioner's first contention is, in effect, that even though its contractual liability to its competitor is not specifically described and

---

[1] SEC. 719. BORROWED INVESTED CAPITAL.

(a) BORROWED CAPITAL.—The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

    (1) The amount of the outstanding indebtedness (not including interest, and not including indebtedness described in section 751 (b) relating to certain exchanges) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, plus.

    (2) In the case of a taxpayer having a contract (made before the expiration of 30 days after the date of the enactment of the Second Revenue Act of 1940) with a foreign government to furnish articles, materials, or supplies to such foreign government, if such contract provides for advance payment and for repayment by the vendor of any part of such advance payment upon cancellation of the contract by such foreign government, the amount which would be required to be so repaid if cancellation occurred at the beginning of such day, but no amount shall be considered as borrowed capital under this paragraph which has been includible in gross income.

(b) BORROWED INVESTED CAPITAL.—The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day.

included in the statute, nevertheless: "(1) That in enacting Section 719, Congress intended to include in borrowed capital for the computation of excess profits credit all genuine indebtedness of the taxpayer evidenced either by the specific types of instruments listed in the section *or by any similar 'written evidences of indebtedness'*; and (2) That petitioner's promise to pay News Company under the agreement of August 20, 1939, is a 'written evidence of indebtedness' of precisely the sort Congress intended to include in borrowed capital." (Italics supplied.)   Petitioner relies on the fact that the final form of section 719 (a) (1) of the Internal Revenue Code, as amended by section 201 of the Second Revenue Act of 1940, is the same as it was when it was first introduced into the House of Representatives (H. R. 10413), that the Committee on Ways and Means reported H. R. 10413 back to the House without amendment, and that in its report accompanying the bill (H. R. Report No. 2894), that committee stated in part as follows:

* * * Borrowed capital consists of the outstanding indebtedness of the taxpayer (exclusive of interest) which is evidenced by bond, note, debenture, bill of exchange, certificate of indebtedness, mortgage, or deed of trust, *or any other written evidence of indebtedness.* * * * 1940-2 C. B. p. 514. [Italics supplied.]

However, neither the Committee on Finance of the Senate in its report (Senate Report No. 2114),[2] nor the Committee of Conference in its report (H. R. No. 3002),[3] included the phrase "or any other written evidence of indebtedness" in its definition of borrowed capital; and section 719 (a) (1) of the Internal Revenue Code, as amended by the Second Revenue Act of 1940 as finally enacted, also omits that phrase from its definition of borrowed capital, to wit: "The amount of the outstanding indebtedness * * * of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *." The inferences which might be drawn from this history are conflicting.   On the one hand, it is arguable, as petitioner does argue, that the specification in section 719 of various types of instruments was not intended to limit borrowed capital to indebtedness evidenced by such instruments; on the other hand, it may be argued that, the Committee on Finance and the Committee of Conference having omitted all reference to the phrase "or any other written evidence of indebtedness" in their respective reports, the phrase was deliberately omitted from section 719 (a) (1) as it was finally enacted into law.

The Congress of the United States has had occasion to use the term "indebtedness" in tax legislation both before and after the enactment

---

[2] 1940-2 C. B. 539.

[3] 1940-2 C. B. 555.

of the Second Revenue Act of 1940. The term "indebtedness" does not include every obligation. *Deputy* v. *Du Pont*, 308 U. S. 488. Therefore, Congress has sometimes included the definition of the term as part of the statute. Where no such definition is included in the statute, the Commissioner of Internal Revenue has, on occasion, issued regulations on the point. For example, section 22 (b) (9) of the Internal Revenue Code, which was originally section 215 of the Revenue Act of 1939, dealing with income from discharge of indebtedness, uses the term "indebtedness" *without defining it in the statute*. Regulations 103, section 19.22 (b) (9)–1, supplies the following definition: "As used in this section 'indebtedness' means indebtedness evidenced by a bond, debenture, note, or certificate, *or other evidence of indebtedness*, in existence on June 1, 1939, and issued by either the taxpayer corporation or any other corporation." (Italics supplied.) Another example is to be found in section 27 (a) (4) of the Internal Revenue Code (in its original form), dealing with corporation dividends paid credit. There the statute itself provides as follows: "As used in this paragraph the term 'indebtedness' means only an indebtedness of the corporation existing at the close of business on December 31, 1937, and evidenced by a bond, note, debenture, certificate of indebtedness, mortgage, or deed of trust, issued by the corporation and in existence at the close of business on December 31, 1937, or by a bill of exchange accepted by the corporation prior to, and in existence at, the close of business on such date." Thus such statutory definition does not contain the phrase "or other evidence of indebtedness," nor does section 19.27 (a)–3 of Regulations 103, covering the statute. Again, when section 783 of the Internal Revenue Code was added by section 250 of the Revenue Act of 1942, subparagraph (d) contained the following definition of "indebtedness": "For the purposes of this section the term 'indebtedness' means any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a bond, note, debenture, bill of exchange, certificate, *or other evidence of indebtedness*, mortgage, or deed of trust." (Italics supplied.) Regulations 109, section 30.783–1 (d) (added by T. D. 5254, Apr. 2, 1943), covering the statute, also contains the phrase "or other evidence of indebtedness," in its definition.

Section 719 (a) (1) of the Internal Revenue Code, as amended by the Second Revenue Act of 1940, contains its own definition of indebtedness and that definition omits the phrase "or other evidence of indebtedness." Similarly, Regulations 109, section 30.719–1 (a) also omits that phrase. The provisions of section 719 are unambiguous. The Commissioner of Internal Revenue has no power therefore to amend it by regulations. *Koshland* v. *Helvering*, 298 U. S. 441. Nor may this Court add to the definition set forth in the statute. As the

Supreme Court of the United States pointed out in the case of *Deputy* v. *Du Pont, supra:* "We cannot sacrifice the 'plain, obvious and rational meaning' of the statute even for 'the exigency of a hard case.' See *Lynch* v. *Alworth-Stephens Co.*, 267 U. S. 364. 370." We should not resort to committee reports when, as here, taken as a whole, they are ambiguous, as against a statute which contains no ambiguity. *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85; *Santa Monica Mountain Park Co., Ltd.* v. *United States*, 99 Fed. (2d) 450 (C. C. A., 9th Cir., 1938); *Riverdale Cooperative Creamery Association* v. *Commissioner*, 48 Fed. (2d) 711 (C. C. A., 9th Cir., 1931); *United States* v. *American Trucking Associations*, 310 U. S. 534; *Harrison* v. *Northern Trust Co.*, 317 U. S. 476. In *Frank J. Cobbs*, 39 B. T. A. 642, we considered section 117 (f) of the Revenue Act of 1934, to the effect that amounts received upon the retirement of "bonds, debentures, notes, or certificates or other evidences of indebtedness * * * shall be considered as amounts received in exchange therefor," and in substance we concluded that Congress, in changing the law as to a specified list of securities, did not even by "certificates or other evidences of indebtedness" intend "to include also contracts which for one reason or another had been regarded as somewhat similar," saying: "This could easily have been done, if not by express specification in the statute, at least by an omnibus term broad enough to include insurance or annuity contracts." We held that the term "evidence of indebtedness" did not denote such contracts. It would appear doubtful, therefore, whether the bilateral contracts here involved would be included even if the statute here under consideration did contain the expression "other evidence of indebtedness." We conclude that section 719 (a) (1) must be applied in the instant case without the benefit of the additional phrase urged by petitioner, to wit, "or any other written evidence of indebtedness," and that borrowed capital must be evidenced by the specific types of instruments set forth in the statute.

Petitioner further contends, however, that its liability, created by its agreement with News Co., "qualifies under Section 719 since it is outstanding indebtedness . . . evidenced by a . . . note . . . '." The statute itself contains no definition of "note." Section 30.719–1 of Regulations 109, qualifies the term "note" used in the statute as "a promissory note." Black's Law Dictionary (1933 Ed.), contains a number of definitions of a promissory note. One such definition is: "A written promise to pay a certain sum of money, at a future time unconditionally." The same definition is also found in Bouvier's Law Dictionary (1914 Ed.). Section 184 of the Uniform Negotiable Instruments Law defines a negotiable promissory note as "an unconditional promise in writing made by one person to another signed by

the maker engaging to pay on demand, or at a fixed or determinable future time a sum certain in money to order or to bearer." [4] The written contract involved in the instant case does not meet these requirements. No usual form of note was executed; only the above contract being relied upon. The promise to pay contained therein is not unconditional. It is an element in a bilateral contract and payment of the sums specified therein are, in effect, conditioned on the performance by the News Qo. of certain promises, namely, to deliver assets and to refrain from publishing or otherwise competing with petitioner over a period of years extending to and including 1950. Therefore it is merely a contract the value of which is not includible in the gross income of the News Co. The facts of record do not permit allocation of the agreed liability in the taxable year between the two elements of the contract. In the case of a promissory note, the antecedent obligation for which it is given is merged [5] and no further duty is required of the promisee. In short, the undertaking in a promissory note is unilateral. If the contract in the instant case were to be construed as a promissory note, its fair market value would be includible in the gross income of the News Co. in the year in which the contract was made. However, this Court has held that "when evidence was introduced showing that the deferred payments were evidenced only by contract, where no notes, bonds, or other evidences of indebtedness other than the contract were given, such contract had no fair market value, and that the amounts of the deferred payments should be included in income when received." *C. W. Titus, Inc.*, 33 B. T. A. 928, 935. The authorities cited by petitioner do not go beyond confirming the essential correctness of the definitions of a promissory note as stated above. We are of the opinion that the contract in the instant case is not a "note" within the meaning of section 719 (a) (1) of the Internal Revenue Code, as amended by the Second Revenue Act of 1940.

In the recent case of *Aetna Oil Co.* v. *Glenn*, 53 Fed. Supp. 961 (U. S. Dist. Ct., W. Dist. Ky., Feb. 14, 1944), the court held that within the language of section 27 (a) (4) of the Revenue Act of 1938, as to dividends paid credit, the word "note" in the expression "bond, note, debenture, certificate of indebtedness, mortgage, or deed of trust" means "a written instrument of some type containing the elements of an unconditional promise to pay." The promise to pay there involved was unilateral and absolute and with "nothing further to be done by the payee in order to make the obligation a binding one," whereas here the contract was bilateral and the payee had a continuing obligation, not to compete. The case only serves to emphasize that we do not have here a note within the statutory intent.

[4] Williston on Contracts (1936 Ed.)   § 1208.
[5] Williston on Contracts (1936 Ed.)   § 221.

We conclude that petitioner's outstanding liability during 1940 to News Co. under the written contract dated August 20, 1939, was not borrowed capital within the meaning of section 719 of the Internal Revenue Code, as amended by section 201 of the Second Revenue Act of 1940, and that therefore 50 percent of such daily average outstanding liability was properly excluded by the Commissioner from petitioner's invested capital for purposes of computing its excess profits credit for 1940. Respondent's determination is sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*