**COMMISSIONER OF INTERNAL REVENUE v. AMES TRUST & SAV. BANK.**

No. 14082.

United States Court of Appeals
Eighth Circuit.

Nov. 10, 1950.

Sumner M. Redstone, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty.

Gen., Mr. Ellis N. Slack, Helen Goodner, and Francis W. Sams, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Ralph R. Randall, Des Moines, Iowa (J. R. Austin and Schaetzle, Swift, Austin & Stewart, all of Des Moines, Iowa, on the brief), for respondent.

Before GARDNER, Chief Judge, and JOHNSEN and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

A state bank of Iowa accepted time deposits, for periods of six or twelve months, and issued certificates of deposit therefor, upon a form as follows:

"Certificate of Deposit
Ames Trust and Savings Bank
Ames, Iowa, ......... 192.. No. ......
..................... has deposited in this Bank .............. Dollars $...... payable to the order of ............... in current funds on the return of this Certificate properly endorsed ................ months after date with interest at the rate of ........... per cent per annum. ·
No interest after maturity
Not subject to check
.........................
Cashier          Teller"

In its tax returns for 1943 and 1944, the bank treated these deposits and certificates as constituting borrowed capital, for purposes of computing credits under the excess profits tax statutes then in force, 26 U.S. C.A. § 710 et seq. The Commissioner of Internal Revenue refused to recognize the certificates of deposit as representing borrowed capital and assessed tax deficiencies against the bank. On petition for redetermination, the Tax Court held with the bank, 12 T.C. 770, and the Commissioner has sought a review.

The question turns upon the provisions of section 719(a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 719(a) (1), and section 35.719-1 of Treasury Regulations 112. The code subsection referred to allows to be recognized as borrowed capital "The amount of the outstanding indebtedness (not including interest) of the taxpayer [corporation] which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust * * *." The regulations, for purposes of the tax involved, make this definition of a certificate of indebtedness: "The term 'certificate of indebtedness' includes only instruments having the general character of investment securities issued by a corporation as distinguished from instruments evidencing debts arising in ordinary transactions between individuals. Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit and evidenced, for example, by a certificate of deposit, a passbook, a cashier's check, or a certified check."

The Tax Court regarded a time certificate of deposit as constituting a certificate of indebtedness within the meaning of the statute and also said that it had the general character of an investment security as required by the regulation. 12 T.C. pages 772, 773. In order, however, to escape the effect of the express provision of the regulation that "Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit and evidenced, for example by a certificate of deposit, a passbook, a cashier's check, or a certified check," the Tax Court declared that "Under the principle of *noscitur a sociis* the association of certificates of deposit with passbooks and checks satisfies us that what was referred to was a certificate of demand deposit."

This seems to us in the circumstances a strained search for meaning and an artificial construction of the regulation. The regulation makes the clear and substantive prescription that "Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit * * *." It then sets out some of the forms in which deposit transactions may be clothed or "evidenced," such as certificates of deposit, passbooks, cashier's checks and certified checks, for the purpose, as we think apparent on its face, of simply emphasizing that, even though so clothed, deposit transactions cannot be regarded as borrowed capital. The enumerated forms are given merely in illustration, as the language "for example" directly indicates.

On all of this, we can see no basis in interpretative function for saying that the term "a certificate of deposit" must be construed to not have its full and natural scope in the regulation and that the general substantive prescription of the regulation, that the deposit liabilities of a bank cannot be classed as borrowed capital, should correspondingly be curbed and be held to be intended to have application only to demand deposits.

■ Nor is the distinction which the Tax Court made between time certificates and demand certificates as reflecting obligations of different type or effect one that has any other recognized basis of support, either in banking law or banking concept. Legally, deposits on time certificates constitute a part of the deposit liability of a bank, just as much as those on demand certificates or in general checking accounts, and are regulated as such. Thus, for example, the Iowa statutes fix reserves for both the time and demand deposits of a state bank. Code of Iowa 1946, § 528.69, I.C.A. And in business operation, time certificates equally with demand certificates are carried on the books and statements of a bank as deposit liabilities, in distinction from borrowings and other obligations—just as the record shows, from the reports of the bank to the Federal Reserve Bank, had been done here. Also, such certificates of a bank are treated the same as its demand certificates are, for purposes of deposit protection by the Federal Deposit Insurance Corporation, 12 U.S.C.A. § 264(c) (12), of which this bank was a member.

■ Hence, neither on the language of the regulation nor as a matter of legal status or banking concept, are we able to see any basis for construing the regulation as the Tax Court did. The only question therefore that could possibly exist in the situation is whether the regulation, in providing that the deposit transactions of a bank, even though represented by certificates of deposit, do not constitute a borrowed-capital indebtedness, is violative of the statute and so is invalid. We do not believe that the regulation is out of harmony with the statute.

■ It is to be borne in mind that what the statutory subsection involved undertakes to deal with is "borrowed capital." And since the paragraph under consideration is one simply of general scope, concept and language, in its coverage of all corporations under the statute (different from the other paragraphs of the subsection, which are applicable only to particular and specially defined situations), we think the regulation properly could undertake to view the scope, concept and language of the paragraph in relation to business reality. That is what it did as to deposit transactions.

■ Historically and recognizedly, bank deposits have never been regarded as representing "borrowed capital," within the commercial connotation of that term. As the Iowa Supreme Court said in Elliott v. Capital City State Bank, 128 Iowa 275, 276, 103 N.W. 777, 778, the term "deposit" always has had a meaning of its own, "peculiar to the banking business, and one that the courts should recognize and deal with according to commercial usage and understanding." And such a transaction is without any of the characteristics of money borrowing. Certainly there is no intent on the part of an ordinary depositor to make a general loan to the bank. Nor is a bank permitted to deal with deposits as general loans, for the law, through legislative or administrative regulation, imposes limitations upon the manner and extent of the use of such funds, different from those on capital investment or borrowings. Also, as we have indicated, the distinction between deposit liabilities and other indebtedness is recognized by the banks themselves in their records and operations.

That this inherent and established distinction between deposit liability and commercial indebtedness, which has been carried into the regulation, was intended to exist under the statute would seem furthermore to be pointed to by the joint hearings upon the bill. A representative of the American Bankers Association sought to have the bill provide that deposit liabilities should constitute borrowed capital, but members of the Committee voiced disagreement with his attempted analogy between

50

deposits and borrowings, and the Committee did not approve any such change. See Joint Hearings on the Second Revenue Act of 1940, pp. 359–362.

The argument has been made here that, since the certificates of deposit involved were negotiable in form, they amounted to promissory notes and should be treated as coming within the designation in the statute of that kind of obligation. It is true that for purposes of protection under the law of negotiable instruments, certificates of deposit have been treated as equivalent to promissory notes. But this would hardly require that a deposit transaction evidenced by a certificate of deposit be regarded as a borrowed capital indebtedness evidenced by a note, for purposes of the present statute. That would only be creating another irrelevant distinction in relation to the purpose of the statute, between negotiable and non-negotiable certificates, just as the Tax Court did between time and demand certificates. For purposes of the statute, there is entitled to be borne in mind the fact, as stated in Elliott v. Capital City State Bank, supra, 128 Iowa 275, 276, 103 N.W. 777, 778, that "It is undoubtedly true that such certificates have many of the incidents of promissory notes, and that they are often classed as such, but it is equally as true that a certificate of deposit represents a transaction entirely different from that represented by a note."

We should perhaps add that we do not consider Economy Savings & Loan Co. v. Commissioner, 5 T.C. 543, affirmed on other grounds, 6 Cir., 158 F.2d 472, cited by the Tax Court and relied upon by the bank here, as being in any way applicable to the present situation. Under the contract governing the dealings of the parties, the funds received by the loan company in that case were not of the nature of a deposit transaction with a bank, as the court itself there recognized, in saying that "Respondent's suggestion that petitioner was really in the banking business and that the funds evidenced by the certificates herein involved are analogous to the deposits of a bank is not borne out by the evidence."

The views indicated require that the judgment be reversed and the cause be remanded.