*Decision will be entered under Rule 50.*

NATIONAL BANK OF COMMERCE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27771.   Promulgated April 13, 1951.

*Thomas J. Reilly, Esq.*, for the petitioner.
*D. Louis Bergeron, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge:* The only issues we have to decide in this proceeding are whether petitioner is entitled under section 719 (a) (1) of the Internal Revenue Code,[1] to include in borrowed invested capital for 1943, and 1945, 50 per cent of (1) its daily average amount of certificates of deposits outstanding and (2) its daily average savings deposits evidenced by passbooks.

The Court of Appeals for the Eighth Circuit has decided that a time certificate of deposit is not a "certificate of indebtedness" includ-

---

[1] SEC. 719. BORROWED INVESTED CAPITAL.

(a) BORROWED CAPITAL.—The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest, and not including indebtedness described in section 751 (b) relating to certain exchanges) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust * * *

ible in the borrowed invested capital of a banking corporation within the meaning of section 719 (a) (1), I. R. C. *Commissioner* v. *Ames Trust & Savings Bank*, 185 F. 2d 47, reversing our decision in 12 T. C. 770. In reversing this Court the Eighth Circuit approved that portion of section 35.719-1 of Regulations 112 relating to bank deposits, which is printed in the margin,[2] and held that this regulation referred to time deposits as well as demand deposits.

Faced with the same question presented in the *Ames* case, we must now decide whether we will stand by our decision in that case and respectfully decline to follow the Eighth Circuit's decision or whether we will accept it as laying down the correct law and follow it in the instant case. See discussion in *Estate of William E. Edmonds*, 16 T. C. 110. We have examined the opinion of the Eighth Circuit in the *Ames* case and we decide to follow it and no longer follow our own decision in the *Ames Trust & Savings Bank*, 12 T. C. 770.

Borrowed invested capital within the meaning of section 719 (a) (1) is capital invested in the business (*Player Realty Co.*, 9 T. C. 215), and it must be evidenced by a document answering the statutory description of "bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust." *West Construction Co.*, 7 T. C. 974; *Canister Co.*, 7 T. C. 967, affd., 164 F. 2d 579; *Journal Publishing Co.*, 3 T. C. 518. In *Ciro of Bond Street, Inc.*, 11 T. C. 188, we cited with approval that portion of Regulations 112, section 35.719-1 which states that:

The term "certificate of indebtedness" includes only instruments having the general character of investment securities issued by a corporation as distinguishable from instruments evidencing debts arising in ordinary transactions between individuals. * * *

The Eighth Circuit pointed out in the *Ames* case that bank deposits do not have the character of investment securities and in 5 Zollmann, Bank and Banking § 3154, is found the following:

The main purpose of a loan is investment. The main purpose of a deposit is safe-keeping. A deposit clearly is not a loan pure and simple. The depositor deals with the bank not merely on the basis that it is a borrower, but that it is a bank subject to the provisions of law relating to the custody and disposition of the money deposited and that the bank will faithfully observe such provisions. The loan in effect is on condition that the use conform to the safeguards provided

---

[2] SEC. 35.719-1 Borrowed Invested Capital.—* * *

* * * *

(d) * * *

* * * * *

The term "certificate of indebtedness" includes only instruments having the general character of investment securities issued by a corporation as distinguishable from instruments evidencing debts arising in ordinary transactions between individuals. Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit and evidenced, for example, by a certificate of deposit, a passbook, a cashier's check, or a certified check.

* * * * * *

by law. The acceptance of such deposit implies that the bank and its directors agree to conform to the conditions named.

In addition to this and the opinion of the Eighth Circuit in the *Ames* case we have new evidence as to the Congressional intent of including certificates of deposit in the borrowed invested capital of a banking corporation.

It is a principle of statutory construction that where the doubtful meaning of a former statute is rendered certain by subsequent legislation the recent legislation is strong evidence of what the legislature intended by the first statute. *Wetmore* v. *Marko*, 196 U. S. 68; *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1; *Bailey* v. *Clark*, 21 Wall. (88 U. S.) 284: *State of Minnesota* v. *Keeley*, 126 F. 866; *Sutherland, Statutory Construction* (3d ed., 1943) section 5110.

Since the date of the decision of the Eighth Circuit in *Commissioner* v. *Ames Trust & Savings Bank*, *supra*, Congress has enacted the "Excess Profits Tax Act of 1950" Public Law 909—81st Congress, 2d Session, approved January 3, 1951.

Section 439 of the Excess Profits Tax Act of 1950 provides in part as follows:

SEC. 439  BORROWED CAPITAL.

(a) AVERAGE BORROWED CAPITAL.—For the purposes of this subchapter, the average borrowed capital for any taxable year shall be the aggregate of the daily borrowed capital for each day of such taxable year, divided by the number of days in such taxable year.

(b) DAILY BORROWED CAPITAL.—For the purposes of this subchapter, the daily borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) the amount of the outstanding indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. In the case of property of the taxpayer subject to a mortgage or other lien, the amount of indebtedness secured by such mortgage or lien shall be considered as an indebtedness of the taxpayer whether or not the taxpayer assumed or agreed to pay such indebtedness, plus

\*      \*      \*      \*      \*      \*      \*

This section as finally enacted was prepared by the Senate Finance Committee and the following language contained in Senate Report 2679, 81st Congress, 2d session, December 18, 1950, explains this section as follows:

(c) *Definition of borrowed capital.*—Borrowed capital, under your committee's bill, is indebtedness (but not including interest) which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. This is substantially the same definition as appears in the House bill. However, your committee's bill limits the amount to be considered as borrowed capital to outstanding indebtedness "incurred in good faith for the purposes of the business."

No such limitation was contained in the House bill although the report of the House committee indicated that it was intended to limit indebtedness treated as borrowed capital to indebtedness "employed in the trade or business." The definition of borrowed capital in both the House bill and your committee's bill is substantially the same as the definition appearing in the World War II statute except for the addition of conditional sales contracts and bank loan agreements. Conditional sales contracts are a form of borrowing which has been used extensively, and your committee believes that their omission from the definition of borrowed capital would work a hardship on taxpayers borrowing substantial amounts in this manner. *The category of indebtedness evidenced by a bank loan agreement, added by your committee's bill, includes such indebtedness owing to a bank, and does not include the indebtedness of a bank to its depositors.* [Emphasis added.]

The only reason we can see for the explanation of the Senate Finance Committee that "The category of indebtedness evidenced by a bank loan agreement * * * does not include the indebtedness of a bank to its depositors," is that the indebtedness of a bank to its depositors is under *no* portion of section 439 to be included in borrowed capital. If the indebtedness of a bank to its depositors were includible in borrowed capital under the words "certificate of indebtedness" then it would be without meaning to exclude it under "a bank loan agreement" and we, therefore, conclude that the indebtedness of a bank to its depositors is not within the definition of borrowed invested capital evidenced by a certificate of indebtedness. We, therefore, hold that petitioner's outstanding certificates of deposit are not includible in its borrowed invested capital under section 719 (a) (1).

The other issue in this proceeding involves the includibility of petitioner's daily average savings deposits evidenced by passbooks. In accordance with petitioner's rules regulating its savings deposits these deposits must be treated as time, rather than demand deposits. We can see, however, no substantial distinction between the character of petitioner's time certificates of deposit and its savings deposits. Like the certificates of deposit, these passbooks evidenced deposits in the banking business of petitioner and we believe that Congress did not intend that they should be included in borrowed invested capital under section 719 (a) (1).

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

OPPER, *J.*, dissenting: I respectfully express my disagreement with the result presently being reached, not only for the reasons stated in *Ames Trust & Savings Bank*, 12 T. C. 770, but also on the authority of *Economy Savings & Loan Co.*, 5 T. C. 543, which is patently indistinguishable from the present proceeding but has not been overruled.