JACKSON FINANCE AND THRIFT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FORD FINANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 60387, 60525. Filed November 19, 1957.

*Sanford M. Stoddard, Esq.*, for the petitioners.[1]
*T. M. Mather, Esq.*, for the respondent.

[1] By permission of the Court, Bert A. Lewis, Esq., and F. Daniel Frost, III, Esq., filed a brief as *amicus curiae.*

274

276

OPINION.

LeMire, *Judge:* The only question presented for decision is whether the petitioners are entitled to include in their borrowed invested capital for the purposes of determining excess profits tax credit, the amount of thrift certificates issued to customers.

The respondent has determined that the amounts received by petitioners represented by thrift certificates do not qualify as borrowed capital under section 439 of the Internal Revenue Code of 1939.[2]  It

---

[2] SEC. 439. BORROWED CAPITAL.

(b) DAILY BORROWED CAPITAL.—For the purposes of this subchapter, the daily borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a

is incumbent upon petitioners to demonstrate the existence of an outstanding indebtedness evidenced by one of the types of instruments specified in such section. *Canister Co.* v. *Commissioner*, 164 F. 2d 579, certiorari denied 333 U. S. 874; *Journal Publishing Co.*, 3 T. C. 518, 522; *Brizard Co.*, 28 T. C. 1142.

Petitioners' contention is limited to the claim that the thrift certificates involved herein qualify as a "certificate of indebtedness," under section 439 (b) (1), and, hence, our inquiry is narrowed to the question of what is encompassed within that specific designation.

The respondent's Regulations 130 deal with the excess profits tax imposed by the Excess Profits Tax Act of 1950, which is here involved. Section 40.439 (1) (f) [3] covers the term "certificate of indebtedness" as used in section 439 (b) (1) of the Internal Revenue Code of 1939, relating to borrowed capital for excess profits tax purposes.

The respondent takes the position that the thrift certificates in question are not instruments having the general character of investment securities issued by a corporation within the definition of the regulations or as the term "certificate of indebtedness" is generally understood and defined; and that the funds which petitioners received from customers were "deposits" evidenced by a thrift certificate book similar to a passbook and hence were not borrowed capital for excess profits tax purposes within the regulations and the cases upholding their validity. *Commissioner* v. *Ames Tr. & Sav. Bank*, 185 F. 2d 47, reversing 12 T. C. 770; *National Bank of Commerce*, 16 T. C. 769; *Capital National Bank of Sacramento*, 16 T. C. 1202.

We cannot regard the thrift certificate in question as an investment security of a corporation by general understanding.

The thrift certificate is nonnegotiable. It has no maturity date, but it is payable on presentation of the certificate book, with the right of the corporation to require a 30-day notice. Only amounts in excess of $100 bear interest. The corporation can redeem the certificate at any time upon payment of the face amount with accrued interest. The fact that the moneys delivered to petitioners for which a certificate is issued are used in the conduct of their business is not

---

bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. In the case of property of the taxpayer subject to a mortgage or other lien, the amount of indebtedness secured by such mortgage or lien shall be considered as an indebtedness of the taxpayer whether or not the taxpayer assumed or agreed to pay such indebtedness * * *

[3] Section 40.439 (1) (f) of Regulations 130 provides in part as follows:

(f) The term "certificate of indebtedness" includes only instruments having the general character of investment securities issued by a corporation as distinguishable from instruments evidencing debts arising in ordinary transactions between individuals. * * * Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit, and evidenced, for example, by a certificate of deposit, a passbook, a cashier's check, or a certified check, and the term "bank loan agreement" does not include the indebtedness of a bank to a depositor.

determinative. Nor is the fact that the thrift certificate is an obligation and creates a debtor and creditor relationship. Mere debts are not investment securities as generally understood or within the meaning of that phrase as contained in the regulations.

The thrift certificate evidences the fact that funds have been placed with petitioners under a thrift plan contract, and is more analogous to a deposit than an investment security.

Since the regulation has been sustained as properly interpreting the meaning of the term "certificate of indebtedness" as used in section 439 (b) (1) of the Code, we conclude that the thrift certificate in question does not qualify as borrowed capital for excess profits tax purposes.

The respondent further argues that petitioners are in the banking business within the purview of section 104 (a) of the Code. In view of the conclusion we have reached on the narrow question presented to us, we do not pass on the merits of that argument.

Petitioners rely heavily on the holding of this Court in *Economy Savings & Loan Co.*, 5 T. C. 543, as a controlling authority. Undoubtedly, our holding in that case and in *Ames Tr. & Sav. Bank*, *supra*, relying upon the *Economy* case, *supra*, would require a decision in favor of petitioners. While the *Economy* case was affirmed on appeal (158 F. 2d 472), the issue before us was not raised or passed upon. The *Ames* case, *supra*, was reversed (185 F. 2d 47). This Court has followed the opinion of the Eighth Circuit in the *Ames* case; *National Bank of Commerce*, *supra; Capital National Bank of Sacramento*, *supra*. As certain affirmative statements in the *Economy* case, *supra*, are in our opinion, directly contrary to our holding in the *National Bank of Commerce* case, *supra*, our decision in the *Economy* case, *supra*, to the extent of the holding that a certificate of deposit is a certificate of indebtedness and constitutes borrowed capital for excess profits tax purposes, will no longer be followed.

The respondent's determinations that the amounts represented by thrift certificates issued by the respective petitioners are not includible in the taxable years involved as borrowed capital for the purpose of computing excess profits tax credit are sustained.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

OPPER, J., dissenting: It seems to me impossible to dispose of this case on the authority of respondent's regulation without concluding that petitioners were "banks." If they were not, the quoted portion of the regulation (footnote 3, *supra*) by its terms has no application. See *Commissioner* v. *Ames Tr. & Sav. Bank*, (C. A. 8) 185 F. 2d 47, 50. There the Court of Appeals distinguished *Economy Savings & Loan Co.*, 5 T. C. 543, affd. (C. A. 6) 158 F. 2d 472, on the ground that that

petitioner was not engaged in the banking business.[1] If we are relying on the *Ames* reversal, what do we do about this distinction? Petitioners' activities are much more comparable to those in the *Economy* case than to either *Commissioner* v. *Ames Tr. & Sav. Bank*, *supra*, or *National Bank of Commerce*, 16 T. C. 769, which was decided on the authority of a legislative history and a case (*Commissioner* v. *Ames Tr. & Sav. Bank*, *supra*) applying only to "banks."

In spite of this, we now say: "The respondent further argues that petitioners are in the banking business * * *. In view of the conclusion we have reached on the narrow question presented to us, we do not pass on the merits of that argument." Unless we do so, I fail to see how we can conclude that the statements contained in the *Economy* case (which has never before been repudiated) are "directly contrary to our holding in the *National Bank of Commerce* case," or even that the conclusion being reached is the correct one. I must accordingly disagree with the present Opinion.

---

[1] "We should perhaps add that we do not consider Economy Savings & Loan Co. v. Commissioner * * * as being in any way applicable to the present situation. Under the contract governing the dealings of the parties, the funds received by the loan company in that case were not of the nature of a deposit transaction with a bank, as the court itself there recognized, in saying that 'Respondent's suggestion that petitioner was really in the banking business * * * is not borne out by the evidence.'"