VALLEY MORRIS PLAN, FORMERLY THE STOCKTON MORRIS PLAN COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61293.   Filed December 24, 1959.

*Frank C. Scott, C.P.A.,* and *Harold J. Willis, Esq.,* for the petitioner.

*Aaron S. Resnik, Esq.,* and *John O. Hargrove, Esq.,* for the respondent.

574

OPINION.

MURDOCK, *Judge:* Section 439 of the Internal Revenue Code of 1939 was added by section 101 of the Excess Profits Tax Act of 1950 and applies to all taxable years ending after June 30, 1950. It pertains to an excess profits tax credit based upon invested capital, which credit includes 75 per cent of the average borrowed capital for the taxable year computed under section 439(a). The average borrowed capital under section 439(a) is the aggregate of the daily borrowed capital for each day of the year divided by the number of days in the year. Section 439(b)(1) provides, *inter alia*, that there shall be included in daily borrowed capital—

The amount of the outstanding indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. * * *

The only issue for decision in this case is whether the petitioner is entitled, in computing its excess profits credit under section 439(b)(1), to include in the computation of its borrowed capital the amount of its outstanding "Term Thrift Certificates." It is not claiming here that the amount due on its "Installment Thrift Certificates" should be included in the computation of its borrowed capital. It states that no excess profits taxes will be due if its outstanding indebtedness on its term thrift certificates is included in the computation of borrowed capital.

The petitioner's indebtedness on the term thrift certificates was ncurred in good faith for the purpose of its business, and the question is whether it was "evidenced" by one of the items mentioned in the above-quoted portion of section 439(b)(1). This question narrows under the arguments of the parties to whether the term thrift certificate might fairly be regarded as a "certificate of indebtedness" within the meaning of the section.

The Commissioner has provided in Regulations 130, section 40.439–1 (e) and (f), that—

The name borne by the certificate is of little importance. More important attributes to be considered are whether or not there is a maturity date, the source of payment of any "interest" or "dividend" specified in the certificate (whether only out of earnings or out of capital and earnings), rights to enforce payment, and other rights as compared with those of general creditors.

The term "certificate of indebtedness" includes only instruments having the general character of investment securities issued by a corporation as distinguishable from instruments evidencing debts arising in ordinary transactions between individuals. * * * Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit and evidenced,

for example, by a certificate of deposit, a passbook, a cashier's check, or a certified check, and the term "bank loan agreement" does not include the indebtedness of a bank to a depositor.

The petitioner was not a bank and was prohibited by law from receiving deposits. Its term thrift certificates were not certificates of deposit. Those certificates had a maturity date, usually 3 years after issuance. The interest specified in the certificate was to be paid in any event and was not limited to payment out of earnings. The certificates were not "instruments evidencing debts arising in ordinary transactions between individuals" but were distinguishable from such instruments in much the same ways as are "instruments having the general character of investment securities issued by a corporation." They were issued by a corporation under express authority of the Department of Investment. They represented investments by the holders of the certificates. They were similar in many respects to the types of evidences of indebtedness listed in section 439(b)(1). It is difficult to exclude these certificates from borrowed capital under section 439(b)(1) even under the Commissioner's regulations, although their payment was not secured by a lien on any particular property of the petitioner or by any designated cash reserve but was payable generally from the funds of the petitioner.

The parties cite some cases arising under section 719(a)(1) of the Internal Revenue Code of 1939. This Court in *Economy Savings & Loan Co.*, 5 T.C. 543, involving an Ohio building and loan corporation, allowed the indebtedness which the petitioner owed upon "certificates of deposit" to be included in the computation of invested capital. The evidences of indebtedness mentioned in section 719(a)(1) are similar to those in section 439(b)(1) and include "certificate[s] of indebtedness." Regulations 112, section 35.719-1(d), in describing "certificate of indebtedness," is substantially the same as Regulations 130, section 40.439-1(f). The *Economy* case was Court reviewed and, on appeal, was modified only as to other issues, 158 F. 2d 472.

The next case was *Ames Trust & Savings Bank*, 12 T.C. 770. The findings there show that the petitioner was an Iowa banking corporation engaged exclusively in a general banking business in Iowa. Its indebtedness on "certificates of deposit" was allowed in the computation of borrowed capital under section 719(a)(1) following the *Economy* case. We there stated that Regulations 112, section 35.719-1, was directed only to ordinary bank deposits of a demand nature, that is, to certificates of deposit payable on demand. That case was reversed by the United States Court of Appeals for the Eighth Circuit, 185 F. 2d 47. Thereafter, the Tax Court in *National*

*Bank of Commerce*, 16 T.C. 769, held, expressly following the reversal in the *Ames* case, that the indebtedness of a United States national banking corporation on certificates of deposit payable at a stated time was not to be included in the computation of borrowed capital. That decision was followed on similar facts in *Capital National Bank of Sacramento*, 16 T.C. 1202, appeal dismissed on stipulation. The last three cases all involved regular banking institutions claiming borrowed capital on certificates of deposit and are not in point here where the petitioner is not a bank, either State or national, is not permitted by law to issue certificates of deposit, and, of course, is not making any claim based upon certificates of deposit.

The next cited case is *Jackson Finance & Thrift Co.*, 29 T.C. 272. The two corporations in that case were engaged in business as industrial loan corporations. They were regularly inspected and supervised in the conduct of their business by examiners in the office of the bank commissioner of the Utah State Banking Department, but the petitioners never held themselves out in any way as a bank. The report avoided deciding whether they were banks. The indebtedness there was on installment thrift certificates represented by a passbook and the creditor could make additional payments at any time increasing the amount of the indebtedness. All additional payments would be entered in the passbook. No maturity date was fixed for the indebtedness. Amounts of less than $100 could not draw interest under the contract. The petitioner could redeem the thrift book by paying the face value with accrued interest at a uniform rate on any date by giving 10 days' notice and agreed to redeem the thrift book at any time at the request of the owner at its face value and accrued interest at the uniform rate, subject to the right of the petitioner to require 30 days' notice in writing and to limit the amount of withdrawals in a certain way. Those restrictions were not enforced. The Tax Court in an opinion reviewed by the Court held that the indebtedness due on the installment passbooks was not to be included in the computation of invested capital under section 439(b)(1) and Regulations 130, section 40.439-1(f).

That case is distinguishable from the present case because it did not involve certificates similar to the term thrift certificates here involved and the present case does not involve installment thrift certificates issued by the petitioner by use of a passbook similar to those involved in the *Jackson* case. The installment payments evidenced by the passbook bear considerable resemblance to an ordinary bank savings account. The purchasers of the petitioner's term thrift

certificates obviously intended to make a loan, an investment, of the $500 or $1,000 represented by each certificate, subject to close supervision by the State Department of Investment. The certificate issued to them was quite unlike an ordinary bank savings account. Several of the reasons in the *Jackson* case for holding against those petitioners are not applicable here because they are based upon facts present there but absent here. It was pointed out in the *Jackson* case that there was no maturity date for payment of the amount due; that only amounts in excess of $100 bore interest; that the amount due was payable with interest upon surrender of the passbook (the rate of interest was the same regardless of when paid) ; and that the passbook evidences deposits "under a thrift plan contract, and is more analogous to a deposit than an investment security." The opinion states that the holding in the *Economy* case "that a certificate of deposit is a certificate of indebtedness and constitutes borrowed capital for excess profits tax purposes, will no longer be followed." The dissent points out that the portion of the regulations mentioning certificates of deposit and a passbook expressly relates only to banks and the Court of Appeals in *Commissioner* v. *Ames Trust & Savings Bank*, *supra*, distinguished *Economy Savings & Loan Co.*, *supra*, on the ground that Economy Savings & Loan Co. was not engaged in the banking business. The dissent in the *Jackson* case reasoned that the *Ames* case would not be authority in *Jackson* unless it was held that the taxpayers in the latter case were banks, and the report refused to hold whether or not they were banks. This dissent supports the statement made above that the present case is not controlled by the *Jackson* case. The *Jackson* case was reversed by the Court of Appeals for the Tenth Circuit, 260 F. 2d 578.

None of the cited cases reviewed above is precisely in point here although, of course, if this Court was correct in the *Economy* case in allowing certificates of deposit to be included in borrowed capital, then surely the term thrift certificates involved herein (which were not certificates of deposit but at least a step removed in a direction favorable to the petitioner) would be borrowed capital within the meaning of section 439(b)(1).

The answer is not free from doubt, but the Court concludes that the petitioner is entitled to include in the computation of the invested capital credit, the indebtedness evidenced by its term thrift certificates.

Reviewed by the Court.

*Decision will be entered under Rule 50.*