OPINION. Murdock, Judge: The term thrift certificates involved in the present case are not different in any material respect from those involved in the recent case of Valley Morris Plan, 83 T.C. 572, and for the reasons given there we hold that the petitioner is entitled to include the indebtedness evidenced by its term thrift certificates in the computation of the invested capital credit. The petitioner in the present case is claiming the right to include all of the indebtedness evidenced by its outstanding certificates in the computation of its invested capital credit. These included not only the term thrift certificates referred to above, but also an insignificant amount of full paid investment certificates which for present purposes can be regarded as similar to the term thrift certificates, unit thrift certificates which for present purposes are substantially similar to the installment thrift certificates, certificates issued to employees which also may be regarded for present purposes as similar to the installment thrift certificates, and the installment thrift certificates issued to the public which represent by far the largest amount in controversy. Section 439(b) (1) provides, inter alia, that there shall be included in daily borrowed capital— The amount of the outstanding indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. * * * ' ; i 4j It is stipulated that the petitioner’s indebtedness on all of its certificates was incurred in good faith for the purpose of its business. The question for decision is whether the petitioner is entitled, in computing its excess profits credit under section 439(b)(1), to include the amount evidenced by its installment thrift certificates in the computation of its borrowed capital. This point was not involved in the Valley Morris Plan case. The answer depends, under the arguments of the parties, on whether an installment thrift certificate as issued by the petitioner might fairly be regarded as a “certificate of indebtedness” within the meaning of this section. The Commissioner has provided in Regulations 130, section 40.439-1 (e) and (f), that— The name borne by the certificate is of little importance. More important attributes to be considered are whether or not there is a maturity date, the source of payment of any “interest” or “dividend” specified in the certificate (whether only out of earnings or out of capital and earnings), rights to enforce payment, and other rights as compared with those of general creditors. The term “certificate of indebtedness” includes only instruments having the general character of investment securities issued by a corporation as distinguishable from instruments evidencing debts arising in ordinary transactions between individuals. * * * Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit and evidenced, for example, by a certificate of deposit, a passbook, a cashier’s check, or a certified check, and the term “bank loan agreement” does not include the indebtedness of a bank to a depositor. The petitioner was not a bank and was prohibited by law from receiving deposits. Its certificates were not certificates of deposit. The portion of the above regulation relating to banks has no application here. The interest specified in the certificates was to be paid in any event and was not limited to payment out of earnings. The certificates were not “instruments evidencing debts arising in ordinary transactions between individuals” but were distinguishable from such instruments in much the same way as are “instruments having the general character of investment securities issued by a corporation.” These certificates were issued by a corporation under express authority from the department of corporations. The application for the permit and the permit to issue these certificates described them as “investments.” They were also regarded as investments by the Securities and Exchange Commission. The petitioner obtained by far the largest part of its working capital from the sale of these certificates. It seems fair to conclude from the entire record that they represented investments by the holders of the certificates. They were similar in many respects to the types of evidences of indebtedness listed in section 439(b) (1). It is difficult to exclude these certificates from borrowed capital under that section even under the Commissioner’s regulations, despite their lack of a maturity date. Commissioner v. Ames Trust & Savings Bank, 185 F. 2d 47, reversing 12 T.C. 770, National Bank of Commerce, 16 T.C. 769, and Capital National Bank of Sacramento, 16 T.C. 1202, appeal dismissed on stipulation, all involved regular banking institutions claiming borrowed capital on certificates of deposit and are not in point here where the petitioner is not a bank and is not making any claim based upon certificates of deposit which by law it is not even permitted to issue. A closely parallel case is Jackson Finance (& Thrift Co., 29 T.C. 272. There are some differences in the facts between that case and this, but they do not serve to distinguish the two cases. That case was reversed, Jackson Finance & Thrift Co. v. Commissioner, 260 F. 2d 578. The Court of Appeals for the Tenth Circuit in the Jackson Finance & Thrift Co. case pointed out that the State of Utah had adopted many statutory safeguards so that the issuance of thrift certificates by industrial loan companies could not be confused with banking functions. The same is true in the State of California. The court said in part: Depositors place their money in banks primarily for safekeeping, secure in the knowledge that many governmental restrictions, both state and federal, are placed upon banks to assure and sometimes, as in the case of Federal Deposit Insurance banks, to insure the safety of the deposit. “Bank” and “bank deposit” are terms as well known in common parlance as they are in technical commercial use. And the terms do not include industrial loan companies nor monies received by sale of thrift certificates either in actual or technical understanding. Money paid for thrift certificates (or other evidences of indebtedness whatever called) are intended as investments, influenced largely by the promise of payment of a high rate of interest, here 4%, but with a concomitant risk. Bank deposits are made at a lower rate of interest, here 2%%, for safekeeping. The court held that the certificates issued by the industrial loan companies in that case “are, and are intended to be, evidences of indebtedness to a purchaser who has invested, and has intended to invest, in a corporate security rather than make a deposit for safekeeping.” Cf. Economy Savings & Loan Co., 5 T.C. 543, modified as to other issues 158 F. 2d 472, in which a similar conclusion was reached. This Court, after restudying the whole question, has come to the conclusion that all of the indebtedness evidenced by the certificates issued by the present petitioner should be included in the computation of the invested capital credit under section 439(b)(1). The parties have stipulated for each year the amount of equity capital as defined in section 437 under the above holding. The alternative issue raised by the petitioner need not be considered or decided in view of this holding. Reviewed by the Court. Decision will he entered u/nder Bule 50.