UNITED STATES of America,
Appellant,

v.

CITY LOAN AND SAVINGS COMPANY,
Appellee.

No. 14124.

United States Court of Appeals
Sixth Circuit.

Feb. 28, 1961.

Carolyn R. Just, Dept. of Justice, Washington, D. C., for appellant, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., and Russell E. Ake, U. S. Atty., Cleveland, Ohio, Richard M. Colasurd, Asst. U. S. Atty., Toledo, Ohio, on the brief.

Ross W. Shumaker, Toledo, Ohio, for appellee, Robert G. Clayton, John J. Kendrick, Shumaker, Loop & Kendrick, Toledo, Ohio, on the brief.

Before MILLER, CECIL and WEICK, Circuit Judges.

WEICK, Circuit Judge.

This case involves the question whether indebtedness evidenced by certificates of deposit issued by the taxpayer is to be considered and treated as borrowed capital for excess profits tax credit purposes under the provisions of Section 439(b) (1) of the Excess Profits Tax Act of 1950. 26 U.S.C.1952 Ed., Sec. 439.

The taxpayer is a building and loan corporation organized under the laws of Ohio. It is engaged in the personal loan and finance business and is licensed under the Small Loan Act of Ohio, R.C. § 1321.01 et seq. Its operations are under the supervision of the Superintendent of Building and Loan Associations and of the Division of Securities of the State of Ohio. It is permitted by law to accept deposits for which it issues either certificates of deposit or pass books. It also maintained special employees' savings accounts. These deposits were not subject to withdrawal by check or draft, but could be withdrawn only in accordance with the provisions of the bylaws of the company.[1]

During the taxable period, taxpayer paid interest on its deposits as follows:

1. "Depositors whose deposits are not pledged, or who are not otherwise indebted to this Company, may as a general rule, upon written application, withdraw all or any part of their deposits at any time, providing the money is in the depository. The application shall be filed as received and paid in that order as fast as fifty per cent of the regular receipts of the company will pay them; but the Board of Directors in its discretion may use all receipts of the company to pay withdrawals. The liability of the Company to pay interest shall cease with the application. All withdrawals shall be taken from the oldest deposit and no withdrawals from any one account or certificate shall exceed $500 in each thirty days ahead of other pending applications, but the Board of Directors may in its discretion pay withdrawals not exceeding $25 at one time, not exceeding $100 within thirty days regardless of the order of the applications filed."

3% per annum on straight certificates; 3½% on certificates, if money was left for one year or more, and 2½% on pass book accounts. On employees' special savings accounts, it paid 3% up to 8%. The banks in the area where it raised all its capital paid only 1% per annum interest on savings accounts and certificates of deposit. Taxpayer is not a member of the Federal Reserve System or of the Federal Deposit Insurance Corporation. It has never been designated a depository of state or federal funds. It is not permitted under Ohio law to include the word "bank" in its name or to engage in the primary banking functions of discount, deposit and circulation.

In preparing its tax return for the year 1951,[2] taxpayer computed its excess profits tax liability under the provisions of Section 439(b) (1) of the Excess Profits Tax Act of 1950 and treated its certificates of deposit including pass books and employee savings accounts as borrowed capital within the meaning of that section.

This treatment was based on the practice followed by the Commissioner of Internal Revenue in auditing taxpayer's returns for excess profits tax years during World War II and on the decision of the Tax Court in Economy Savings & Loan Co. v. Commissioner, 1945, 5 T.C. 543 modified on other issues by this Court in 158 F.2d 472. This decision of the Tax Court upheld such treatment with respect to certificates of deposit of a similar corporation organized under Ohio law and was acquiesced in by the Commissioner. (1945 Cum.Bull. #3.)

The taxpayer had filed a claim for refund on issues other than here involved and during consideration thereof by the Appellate Division of the Internal Revenue Service in Cleveland, it was determined that no refund was due for 1951,

but that there was a deficiency for that year in the amount of $443,421.36 plus interest on the ground that taxpayer's certificates of deposit did not represent borrowed capital within the meaning of said Section 439 of the Act. This affected taxpayer's liability not only for 1951 but also for the tax years of 1952 and 1953 in the approximate amount of $2,750,000.00. Taxpayer paid the deficiency for 1951 and filed claim for refund which was disallowed and the present action in the District Court followed.

The facts were stipulated.[3] The District Judge tried the case without a jury. He held that the Commissioner of Internal Revenue either lacked power to deny or was equitably estopped from denying that the taxpayer's certificates of deposit represented borrowed capital within the meaning of the law and that in any event the certificates of deposit did constitute borrowed capital. He rendered an oral opinion and adopted findings of fact and conclusions of law and entered judgment in favor of the taxpayer and against the Government for $799,543.95 plus interest. This appeal followed.

The Excess Profits Tax Act of 1950 provides:

"(b) Daily Borrowed Capital.— For the purposes of this subchapter, the daily borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

"(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. * * *"

---

2. "1952 is also involved to the extent of a carry-back from that year to 1951 to an unused excess profits credit."

3. Under the stipulation we consider only the certificates of deposit used by taxpayer for raising operating capital and not pass books or employees' savings accounts which were not in issue.

(See: U.S.C.1952 Ed., Sec. 439.)

There is no material difference between this statute and the Excess Profits Tax Act which was in effect during World War II. 26 U.S.C. § 719(a) (1). We will treat them as identical for the purposes of this case.

The Treasury regulations promulgated under this statute are contained in footnote [4].

It was not disputed that the certificates of deposit issued by taxpayer constituted an outstanding indebtedness owing by it to the holders of the certificates and that such indebtedness was incurred in good faith for the purposes of its business. The only remaining requirement of the statute is that the debt be evidenced by any one of the nine instruments therein specified. A sample certificate of deposit issued by taxpayer is shown in footnote [5].

Is this certificate of deposit a certificate of indebtedness and does it constitute borrowed capital within the meaning of the statute?

In Economy (5 T.C. 543) the Tax Court held that it was a certificate of indebtedness and constituted borrowed capital. In that case the taxpayer was an Ohio building and loan company engaged in the personal loan and finance business and issuing pass books and certificates of deposit substantially identical with those of the taxpayer.

In Jackson Finance & Thrift Co. v. Commissioner, 10 Cir., 1958, 260 F.2d

4. Treasury Regulations 130, Promulgated under the Internal Revenue Code of 1939:

"Sec. 40.439–1 Borrowed Capital. * *
*　　*　　*　　*　　*

"(e) Whether outstanding certificates designated by such names as 'debenture preferred stock' or 'guaranteed preferred stock' constitute borrowed capital depends upon whether the holder has a proprietary interest in the corporation or has the rights of a creditor, determined in the light of all the facts. The name borne by the certificate is of little importance. More important attributes to be considered are whether or not there is a maturity date, the source of payment of any 'interest' or 'dividend' specified in the certificate (whether only out of earnings or out of capital and earnings), rights to enforce payment, and other rights as compared with those of general creditors.

"(f) The term 'Certificate of indebtedness' includes only instruments having the general character of investment securities issued by a corporation as distinguishable from instruments evidencing debts arising in ordinary transactions between individuals. The term 'conditional sales contract' means a contract corresponding to a mortgage except that the transfer of title is made dependent upon the payment of the stipulated price. Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit and evidenced, for example, by a certificate of deposit, a passbook, a cashier's check, or a certified check, and the term "bank loan agreement" does not include the indebtedness of a bank to a depositor."

5.

578,[6] the Court held that "Thrift Certificates" issued by an industrial loan company organized under Utah law constituted borrowed capital for excess profits tax credit purposes under § 439(b) (1) of the 1939 Code. The Government distinguishes this case from Economy on the ground that Jackson could not accept deposits under Utah law whereas Economy could under Ohio law.

Following the decision in Jackson the Tax Court held that thrift certificates for a fixed term issued by an industrial loan corporation under California law evidenced borrowed capital for excess profits credit purposes. Valley Morris Plan Co. v. Commissioner, 1959, 33 T.C. 572. Later it applied the same rule to Thrift certificates payable in instalments. Morris Plan Co. v. Commissioner, 33 T.C. 720 (1960). In California, like Utah, industrial loan companies are not permitted to accept deposits. Economy was cited in both cases.

As before indicated, the Government relies on Commissioner of Internal Revenue v. Ames Trust & Savings Co., 8 Cir., 1950, 185 F.2d 47 which held that certificates of deposit issued by a bank payable within 6 or 9 months with interest were not certificates of indebtedness within the meaning of the Excess Profits Tax Act. The Court distinguished Economy on the ground that the certificates in Economy were not of the nature of a deposit transaction with a bank and that Economy was not a bank as was Ames Trust & Savings Bank. This would seem to us to be a valid distinction rendering Ames inapplicable to the present case.

After Ames, the Tax Court recognized the distinction between commercial indebtedness and deposit liability of a bank

and held that the latter was not to be included in borrowed capital under the Excess Profits Tax Act of 1950. National Bank of Commerce, 1951, 16 T.C. 769 (deposits evidenced by certificates of deposit and pass books); Southern Bank of Norfolk, T.C.Memo.Op.Dkt. 29543 (Jan. 22, 1952); Cf. Capital National Bank of Sacramento, 16 T.C. 1202; La-Salle National Bank, 23 T.C. 479.

In National Bank of Commerce, supra, the Tax Court referred to the legislative history of the 1950 Act. In the Senate Finance Committee, Senate Report 2679, 81st Cong. 2d Session December 18, 1950 it is stated:

"The category of indebtedness evidenced by a bank loan agreement, added by your committee's bill, includes such indebtedness owing to a bank and does not include the indebtedness of a bank to its depositors."

The Government contends that although taxpayer is not a bank it exercises some functions similar to those of a bank in accepting deposits, issuing pass books and certificates of deposit and in making personal loans. The deposits of taxpayer were not similar to those of a bank in that withdrawal was subject to provisions of its bylaws. Bank deposits on the other hand are treated as cash and may be withdrawn on demand unless they provide for a fixed term. Taxpayer was not a bank, but a building and loan company. A bank would not be classified as a building and loan company simply because it made loans on real estate.

The Treasury Regulations quoted in footnote 4 expressly exclude indebtedness incurred by a bank, arising out of the receipt of a deposit and evidenced by a certificate of deposit, from treatment

6. This decision reversed the decision of the Tax Court reported in 29 T.C. 272. The Tax Court applying the rule in Ames, supra, had held that the thrift certificates did not constitute borrowed capital for excess profits tax credit purposes. The Tax Court said that the holding in Economy 'that a certificate of deposit is a certificate of indebted-

ness and constitutes borrowed capital for excess profits tax purposes will no longer be followed.' This statement, however, was not repeated in later decision of the Tax Court which cited Economy. Valley Morris Plan Co. v. Commissioner, 1959, 33 T.C. 572; Morris Plan Co. v. Commissioner, 1960, 33 T.C. 720.

**616**

as borrowed capital. They would not seem to apply to a building and loan company, which is not a bank, even though it may exercise a few functions similar to those exercised by a bank.

While the question in this case is a close one, we think that the administrative practice of the Commissioner in following Economy for so many years is not to be lightly discarded. In our judgment, the findings of the District Judge are not clearly erroneous. We would not be justified in disturbing them. Commissioner of Internal Revenue v. Duberstein, 1959, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097.

The judgment of the District Court is affirmed.