Joseph H. BRECKLEIN and Frances R. Brecklein, Plaintiffs,

v.

Edwin O. BOOKWALTER, Defendant.

Civ. A. No. 13236–4.

United States District Court
W. D. Missouri, W. D.

July 15, 1964.

See also 32 F.R.D. 477.

Watson, Ess, Marshall & Enggas, by Samuel J. Molby and Russell W. Baker, Kansas City, Mo., for plaintiffs.

F. Russell Millin, U. S. Atty., by William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., Robert W. Ryan, Jr., Atty., Dept. of Justice, Washington, D. C., for defendant.

BECKER, District Judge.

In this suit for refund of income taxes for the year 1957 in the sum of $9,222.62 (or, in the alternative, in the sum of $4,-161.17) the following facts appear from the discovery proceedings, the pre-trial proceedings, the admissions of the parties, and hearing on the plaintiffs' mo-

tion for summary judgment. The motion for summary judgment was expanded into a plenary evidentiary hearing on the separate issue of alleged discrimination.

## FACTS

On June 25, 1954, the City of Kansas City, Missouri, enacted Ordinance No. 17974 authorizing the acquisition and construction of offstreet parking facilities for the business district in and around the intersections of 31st Street and Linwood Boulevard with Troost Avenue. The ordinance determined the district which was deemed to be benefitted from the proposed improvements and against which special assessments would be made in accordance with Sections 151 and 152 of the Charter of Kansas City. The plaintiff Joseph Brecklein, individually and as trustee, owned real property in the benefit district.

In due course, pursuant to the ordinance and City Charter, special tax bills were issued against business rental properties owned by the plaintiff Joseph Brecklein individually and as trustee, as follows: Special tax bills Nos. 77 and 79 in the total amount of $9,114.30 were issued against the property owned by Joseph Brecklein as trustee. Special tax bill No. 78 in the amount of $10,315.00 was issued against the property owned by plaintiff Joseph Brecklein individually.

Under the terms of the tax bills the principal sum could be paid in one lump sum without interest, or in five annual installments with 6 per cent interest on the unpaid balances.

On January 15, 1957, plaintiff Joseph Brecklein, individually and as trustee, paid the special assessments of tax bills Nos. 77, 78, and 79. Thereafter on or before April 15, 1958, Joseph Brecklein and the plaintiff Frances Brecklein, his wife, filed a joint individual income tax return for 1957 in which they did not deduct as an expense the payment of the special assessment paid on the individual property of Joseph Brecklein.

On or before April 15, 1958, Joseph Brecklein as trustee filed a fiduciary income tax return in which the special

assessment paid as trustee was not deducted as an expense. However on June 3, 1960, the plaintiff Joseph Brecklein as trustee filed an amended fiduciary return for 1957, claiming an additional expense deduction of $10,315.00.

On November 21, 1958, and June 7, 1960, the plaintiffs filed claims for refund of an alleged overpayment of income taxes resulting from failure to deduct the special assessments paid in 1957. (The plaintiffs were affected individually by the trust property assessment because Joseph Brecklein was a beneficiary of the trust and obligated to report and pay taxes on the individual income reflected by the fiduciary return.)

### THE WIRTHMAN BUILDING

In the same Kansas City special benefit district in which plaintiff Joseph Brecklein owned the business rental properties involved in this case, a partnership owned a business rental property known as the Wirthman Building. A special assessment for the proposed offstreet parking improvement was made against this building. The owners elected to pay the assessment in five annual installments. The partnership fiscal year ended on January 31 of each year. For the fiscal year ended January 31, 1958, the Wirthman Building owners capitalized the first installment. Later, after revocation of the determination letter hereafter mentioned, the owners capitalized the installments paid during the fiscal years ended January 31 of 1961 and 1962.

But in the returns for the fiscal years ended January 31 of 1959 and 1960, the installments paid were deducted as ordinary and necessary business expenses under the authority of the following determination letter of June 18, 1959, issued by the District Director:

"Wirthman Building
c/o Norman Asher
134 North LaSalle
Chicago, Illinois

"Gentlemen:

"This refers to your letter dated June 5, 1959, relative to the deductibility for Federal income tax purposes, of benefit assessments made against your property at 3100 Troost Avenue, Kansas City, Missouri, for installing and maintaining public parking lots.

"The information submitted in your letter, and information in this office, discloses that the Wirthman Building is a partnership operating a business office building at 3100 Troost Avenue, Kansas City, Missouri. Partnership income tax returns, Form 1065, are filed in the Kansas City, Missouri District. In 1954 the City of Kansas City passed an ordinance authorizing the acquisition of off-street parking facilities for the 31st and Troost District and providing for the assessment of benefits in the benefit district. The partnership became a member of the 31st and Troost Off-Street Parking Association and made a deposit of $2,500.00 in 1957 for the purpose of participating in certain costs. Their share of the benefit assessments made by the City amounted to $12,910.00 which can be paid over a period of five years. The first payment of the assessment was made in June, 1957. You request to be advised whether such benefit assessments are deductible for Federal income tax purposes as ordinary and necessary business expenses. The Special Ruling of May 21, 1958, in the case of the City of Bismarck, North Dakota, was cited as the basis for your contention that the benefit assessments are deductible as the installments are paid.

"The purpose of the parking space in the Bismarck special ruling, and in your case, are similar. In both instances the basic purpose was to provide parking space for a particular commercial district and to advance the ecomonic [sic] activity of the district. The conclusion in the Special Ruling was stated as follows:

" 'Upon the basis of the information submitted, it is the conclusion

of this office that the assessments described constitute allowable deductions by taxpayers engaged in a trade or business in the area involved as ordinary and necessary business expenses under Section 162 of the Internal Revenue Code of 1954, provided the taxpayer can show that such payments are reasonable, bear a direct relationship to his business and are made with a reasonable expectation of a financial return commensurate with the amount paid.'

" 'Since the question is a factual one, final determination will be made by the appropriate field office after examination of the return of any taxpayer claiming the deduction.'

"In view of the foregoing, it is the opinion of this office that the benefit assessments paid for the cost and maintaining of parking lots in the 31st and Troost district are ordinary and necessary business expenses. This opinion is subject, however, to any final determination, after examination of returns already filed, of whether such payments are reasonable, bear a direct relationship to your office building business, and were made with a reasonable expectation of a financial return commensurate with the amount paid.

"Very truly yours,

"E. O. BOOKWALTER
DISTRICT DIRECTOR

"Lester V. Lechliter
Chief, Audit Division"

This determination letter was revoked by a letter dated January 12, 1961, as follows:

"Wirthman Building
c/o Norman Asher
134 N. LaSalle
Chicago, Illinois

"Gentlemen:

"This refers to our letter addressed to you under date of June 18, 1959, relating to the deductibility for Federal income tax purposes of certain benefit assessments. These assessments were levied by the City of Kansas City, Missouri, against your property located at 3100 Troost Avenue, specifically for the purpose of providing funds with which to furnish off-street parking facilities.

"The opinion expressed in our letter was predicated upon a ruling issued by the Tax Rulings Division of the National Office covering similar assessments by the City of Bismarck, North Dakota. In that ruling, it was held (subject to a factual determination to the contrary) that the assessments appeared to be allowable as business expense under Section 162 of the Internal Revenue Code of 1954.

"Further consideration has been given this matter, and it is concluded that the assessments are for local benefits of a kind tending to increase the value of the property assessed. Under the provisions of Section 164 (b) (5) of the Internal Revenue Code of 1954 and the applicable regulations, assessments of this type are neither deductible for income tax purposes as a tax or as a business expense. See Rev.Rul. 60–327, Internal Revenue Bulletin 1960–42, page 12, dated October 17, 1960.

"In view of the foregoing, our letter dated June 18, 1959, no longer reflects the position of this office. Accordingly, no deductions should be claimed for the special assessments referred to above in the returns filed henceforth by the partnership.

"Very truly yours,

"Lester V. Lechliter
Chief, Audit Division

"WMTraver:vc"

The Wirthman Building letter revocation was applied prospectively only, leaving the deductions of two installments undisturbed by retroactive application of the letter of revocation.

## THE BISMARCK, NORTH DAKOTA, RULING

The Wirthman Building determination letter followed a ruling issued on

May 21, 1958, to the City of Bismarck, North Dakota, by the Acting Director, Tax Rulings Division, concerning the deductibility for federal income tax purposes of special assessments against commercial properties to finance off-street parking facilities. (No one suggests that there is any substantial difference for income tax purposes between the Bismarck assessments and the Kansas City assessments in the case at bar. That no such difference exists is the finding in this case.) This ruling was not officially published in the Internal Revenue Bulletin by the Internal Revenue Service, but it was published in the Commerce Clearing House Tax Service and other tax services. In this manner it was known generally and nationally. The Bismarck ruling was not issued to a taxpayer but to the City of Bismarck. The Bismarck ruling is as follows:

"Deductions: Business expenses: Assessments to provide public parking lots.—Special assessments levied against commercial properties in the central business district of Bismarck, North Dakota, to provide parking facilities on the edges of that district are deductible as business expenses on a showing that they are reasonable in amount, related to the taxpayer's business, and made with a reasonable expectation of a financial return commensurate with the amount paid. New commercial areas were required to furnish off-street parking space, but in lieu of requiring the central area businesses to do this, total parking needs were fixed by formula and assessments for the public parking areas were allocated according to the space needs remaining after crediting the units of parking space already provided by the business. Back reference: ¶ 1330.015.

"[Following is the text of a letter dated May 21, 1958, and signed by Dan J. Ferris, Acting Director, Tax Rulings Division.]

"This is in reply to your letter dated April 2, 1958, submitting additional information as requested in our letter dated March 21, 1958, relative to the deductibility for Federal income tax purposes, of special assessments made against commercial properties in the central business area of the City for parking lots.

"The information submitted discloses that in 1953 the City of Bismarck adopted an entirely new zoning ordinance, an excerpt from which accompanied your letter, which requires the furnishing of off-street parking in the new commercial areas. The central business district was excluded from the requirements of this ordinance, since it was realized that to require off-street parking in a built-up area would be most unreasonable.

"Parking Improvement Districts for the central business area were created by the Board of City Commissioners under authority of Chapter 40–22 of Title 40 of North Dakota Revised Code of 1943, as amended. Copies of extracts from the Minutes of Meetings of the Board of City Commissioners at which such Districts were created accompanied your letter dated April 2, 1958.

"[The correspondence also stated that 'an entirely new zoning ordinance * * * requires the furnishing of off-street parking in the new commercial areas. The central business district was excluded from the requirements of this section * * * [and only in] the central business district where off-street parking requirements do not apply are there special assessment charges made for parking lot purposes.' It also described the use of the special assessments as 'to finance parking lots in the central business area of the City of Bismarck. The City of Bismarck has acquired three parking lots primarily used

for customer parking located close to the shopping area and four parking lots in the fringe of the business district.'—CCH.]

"It is stated that some parking lots were purchased and some leased. To finance such parking lots the Board of City Commissioners levied special assessments against the commercial properties in the central business area under authority contained in the above-mentioned provision of the North Dakota Code. Businesses which furnish part or all of the required parking space are assessed for only such parking space as is not furnished. The amounts received are segregated in special funds dedicated purely for purposes of financing the off-street parking program of the City. The parking lots are primarily public in nature, but have the basic purpose of providing parking space for the commercial district and enhancing the economic activity of the district.

"You request to be advised whether such assessments will constitute deductible business expenses, for Federal income tax purposes, to taxpayers who pay them.

"Upon the basis of the information submitted, it is the conclusion of this office that the assessments described constitute allowable deductions by taxpayers engaged in a trade or business in the area involved as ordinary and necessary business expenses under section 162 of the Internal Revenue Code of 1954, provided the taxpayer can show that such payments are reasonable, bear a direct relationship to his business and are made with a reasonable expectation of a financial return commensurate with the amount paid.

"Since the question is a factual one, final determination will be made by the appropriate field of-

fice after examination of the return of any taxpayer claiming the deduction."

On the basis of the original Bismarck ruling, the determination letter of June 18, 1959, to the Wirthman Building owners, referred to hereinabove, was issued by the chief of the audit division for the District Director at Kansas City.

By letter of the Commissioner of Internal Revenue dated April 4, 1960, the original Bismarck ruling of May 21, 1958, was modified prospectively in the following language:

"The Commissioners of the
City of Bismarck
Box 300
Bismarck, North Dakota
"Attention: Mr. Tom Baker
City Auditor

"Gentlemen:

"This is in reference to our letter dated May 21, 1958, in which it was held that special assessments levied by the City of Bismarck against the commercial properties in the central business area for the purpose of constructing off-street parking facilities constitute allowable deductions by taxpayers engaged in a trade or business in the area involved under section 162 of the Internal Revenue Code of 1954, provided the taxpayer can show that such payments are reasonable, bear a direct relationship to the business and are made with a reasonable expectation of a financial return commensurate with the amount paid.

"The information furnished disclosed that in 1953 the City of Bismarck adopted a new zoning ordinance, whereby each building was required to provide off-street parking. However, the downtown business district was excluded from such requirement. In order to provide the needed downtown parking spaces, the city purchased or leased parking lots in or near the downtown area. The financing of the lots was accomplished by means of special as-

sessments, which was based upon the costs of spaces required under a predetermined formula. Businesses which furnish part or all of the required parking space are assessed for only the parking space which is not furnished.

"It is stated that the amounts received in payment of the special assessment are segregated in special funds to be used wholly for purposes of financing the off-street parking program. The parking lots are primarily public in nature, but have the basic purpose of providing parking space for the commercial district and enhancing the economic activity of the district.

"Section 164 of the Internal Revenue Code of 1954 provides that in computing taxable income, there shall be allowed as a deduction taxes paid or accrued within the taxable year, except as otherwise provided for therein.

"Section 164(b) (5) of the 1954 Code provides that no deduction shall be allowed for taxes assessed against local benefits of a kind tending to increase the value of the property assessed except for so much of such taxes as is properly allocable to maintenance or interest charges, or for taxes levied by a special taxing district if (1) the district covers the whole of at least one county, (2) at least 1,000 persons are subject to the taxes levied by the district, and (3) the district levies its assessments annually at a uniform rate on the same assessed value of real property, including improvements, as is used for purposes of the real property tax generally.

"Section 1.164–4(a) of the Income Tax Regulations provides, in part, that so called taxes, more properly assessments, imposed because of and measured by some benefit inuring directly to the property against which the assessment is levied do not constitute an allowable deduction from gross income. A tax is considered assessed against local benefits when the property subject to tax is limited to property benefited. Special assessments are not deductible, even though an incidental benefit may inure to the public welfare.

"Section 1.164–4(b) (1) of the Income Tax Regulations provides that insofar as assessments against local benefits are made for the purpose of maintenance or repair or for the purpose of meeting interest charges with respect to such benefits, they are deductible. In such case the burden is on the taxpayer to show the allocation of the amounts assessed to the different purposes. If the allocation cannot be made, none of the amount so paid is deductible.

"Accordingly, it is now held that the assessments described in our letter of May 21, 1958, constitute assessments against local benefits of a kind tending to increase the value of the property assessed within the meaning of section 164(b) (5) of the 1954 Code, and are not deductible, for Federal income tax purposes, except for so much of such taxes as is properly allocable to maintenance or interest charges.

"The ruling dated May 21, 1958 is, therefore, modified accordingly.

"Pursuant to authority contained in section 7805(b) of the 1954 Code, this ruling will not be applicable to assessments paid or accrued for taxable years beginning prior to January 1, 1960.

> "Very truly yours,
> /s/ Dana Latham
> Commissioner"

The last paragraph of this letter explicitly provides that the modification of the ruling does not apply retroactively under the statutory authority of Section 7805(b), I.R.C.1954, which reads as follows:

"(b) Retroactivity of regulations or rulings.—The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regu-

lation, relating to the internal revenue laws, shall be applied without retroactive effect."

### APPLICATION OF MODIFICATION BY COMMISSIONER OF APRIL 4, 1960

Although a contrary factual contention was once made by the defendant in a pre-trial brief, it now appears that there was no retroactive application of the 1960 Bismarck ruling that the special assessments were not deductible as ordinary and necessary business expenses. It now appears that in the cases of the hundreds of Bismarck property owners, there was no retroactive application of the ruling in respect of the Bismarck benefit district.[1]

Some evidence was adduced to suggest that failure to give retroactive application of the ruling to the Wirthman Building assessment was an unintended mistake or the result of intended administrative failure to act because of the small amount of taxes collectible.

This evidence on subjective intention of the agents was speculative in nature and therefore unsatisfactory, not because of any lack of credibility on the part of the witnesses, but because of lack of personal knowledge. In any event the failure of the District Director's agents to apply the ruling retroactively was strictly in accord with the Commissioner's express direction pursuant to Section 7805 (b), I.R.C.1954. The action of the agents of the Kansas City District Director viewed objectively was strictly in accordance with the Commissioner's rulings at all times.

Finally it is noted that although ample opportunity was afforded, there was no evidence produced that in any other instance in the United States has the Commissioner or any of his subordinates undertaken to apply retroactively the Commissioner's modification ruling of April 4, 1960. It would appear that any such action would be inconsistent with the express direction of the Commissioner. On the record in this case it appears that the administrative practice was consistently a practice of no retroactive application of the Commissioner's modification of April 4, 1960.

This is not a case of inadvertence or mistake, as originally supposed by defendant's counsel, but a deliberate exercise of power delegated to Commissioner by Section 7805(b) to provide that the modification should not be retroactive. Apparently all other taxpayers of the nation who paid similar special assessments prior to January 1, 1960, were accorded the benefit of this exercise of power.

The plaintiffs in this case are entitled as a matter of law to equality of treatment with the 500 Bismarck taxpayers, the Wirthman partners, and any others who were accorded the benefit of the Commissioner's modification provision of no retroactive application of the modification ruling of April 4, 1960. Cases supporting this view are Exchange Parts Co. of Fort Worth v. United States (Ct.Cl., 1960) 279 F.2d 251; Connecticut Railway & Lighting Co. v. United States (Ct.Cl., 1956) 142 F.Supp. 907, 135 Ct. Cl. 650; City Loan & Savings Co. v. United States (N.D.Ohio, 1959) 177 F. Supp. 843, aff'd in (C.A. 6) 287 F.2d 612.

The cases of Weller v. Commissioner (C.A. 3) 270 F.2d 294, cert. denied, 364 U.S. 908, 81 S.Ct. 269, 5 L.Ed.2d 223, and Goodstein v. Commissioner (C.A. 1) 267 F.2d 127, are not applicable to the facts of this case. On the retroactive issue these cases permit discrimination between taxpayers who secure private individual advance letter rulings and rely on them and taxpayers who do not secure such rulings. These cases are not in point and are not in conflict with the cases relied on here.

---

1. It is stipulated in this record that all 500 property owners in Bismarck who prepaid their assessments before January 1, 1960, were not subjected to retroactive assessment after the modification of April 4, 1960. (Tr. 60). Any retroactive assessment of these taxpayers would have been a violation of the modification letter.

The case of Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, rehearing denied, 353 U.S. 989, 77 S.Ct. 1279, 1 L. Ed.2d 1147, is not directly in point, but impliedly supports the ruling in the case at bar. In discussing the power of the Commissioner to determine whether a ruling, regulation, or Treasury decision shall be retroactive, the Supreme Court said after quoting 3791(b), I.R.C.1939 (now 7805(b), I.R.C.1954):

> "The petitioner contends that this section forbids the Commissioner taking retroactive action. On the contrary, it is clear from the language of the section and its legislative history that Congress thereby confirmed the authority of the Commissioner to correct any ruling, regulation or Treasury Decision retroactively, but empowered him, *in his discretion to limit retroactive application to the extent necessary to avoid inequitable results.*" (Emphasis added.) 353 U.S. at page 184, 77 S.Ct. at page 710, 1 L.Ed.2d at page 750.

Here the Commissioner exercised his power to determine the extent of this widely published Bismarck ruling to avoid inequitable results. His discretionary exercise of power is valid. Section 7805(b), I.R.C. See also Lesavoy Foundation v. Commissioner (C.A. 3) 238 F.2d 589; Annotation 1 L.Ed.2d 2051 at page 2054. In the Lesavoy case, Judge Goodrich carefully pointed out the distinction between "individualized taxpayer's rulings" and "a ruling of general application," such as the one involved in this case at bar. The failure of the Bismarck rulings to appear in the Internal Revenue Bulletin should not be decisive in this case. To so hold would be a preference for immaterial form over substantial administrative practice.[2]

2. See Griswold, A Summary of the Regulations Problem, 54 Harv.L.Rev. 398, 417–19 (1941) wherein this is said:
"In considering the effect of administrative interpretation, no hard and fast line as to the precise nature of the ruling involved should be drawn. Of course, regulations are the most formal and dignified means of expressing Treasury interpretation, and they should be given weight accordingly. But Treasury construction and practice may clearly appear in other forms, such as opinions of the General Counsel, or in various office rulings. It may even appear, and quite plainly, in certain types of cases, where no public ruling has been issued at all.[58] (58. E. g., Massachusetts Protective Ass'n v. United States, 114 F.2d 304 (C.C.A. 1st, 1940); G.C.M. 14407, XIV–I Cum. Bul. 103, 104 (1935). For cases outside the tax field, where practice only, and not regulations, was involved, see Edward's Lessee v. Darby, 12 Wheat. 206, 210 [6 L.Ed. 603] U.S. 1827); United States v. Hill, 120 U.S. 169, 182 [7 S.Ct. 510, 30 L.Ed. 627] (1887); United States v. Farrar, 281 U.S. 624, 634 [50 S.Ct. 425, 74 L.Ed. 1078] (1930); Mintz v. Baldwin, 289 U.S. 346, 351 [53 S.Ct. 611, 77 L.Ed. 1245] (1933); Alaska Steamship Co. v. United States, 290 U.S. 256, 261 [54 S.Ct. 159, 78 L.Ed. 302] (1933).) The matter of the type of ruling should be simply a matter of degree. Where the ruling is less formal than a regulation, it may well take a clearer ruling, and a longer period of time may be required before the effect of long-continuedness becomes impressive. The less formal rulings, too, are perhaps more likely to be inconsistent or unclear than the formal regulations.[59] (59. Cf. Estate of Sanford v. Commissioner, 308 U.S. 39 [60 S.Ct. 51, 84 L.Ed. 20] (1939), where the Court found that the evidence of practice was inconclusive, though it is hard to see how a taxpayer could make it appear more clearly; and the Court's assertion [p. 52, 60 S.Ct. p. 59] that 'it is apparent that there was no established administrative practice before the opinion of April, 1935' seems very hard to follow. The Court overlooked the rather obvious naïveté of the Bureau in resurrecting an ancient case under the 1924 Act in an effort to produce the conflict which would resolve the uncertainty between the prior practice and the decision in Hesslein v. Hoey, 91 F.2d 954 (C.C.A.2d, 1937), cert. denied, 302 U.S. 756 [58 S.Ct. 284, 82 L.Ed. 585] (1937). As it turned out, the case went the same way as the Hesslein case, but under circumstances which induced the Court to take it up. The extreme hardship that actually resulted in that case is a powerful argu-

Finally the case of Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, must be considered. The Lewis case is not in point. In the case at bar an overpayment appears from a corrected computation, if the foregoing conclusions are correct. In the Lewis case no overpayment appeared when the return was corrected.[3]

Therefore the plaintiffs are entitled to recover on Count I of the petition for refund.

The parties stipulated at a pre-trial conference that in the event the expenditures in question were deductible by plaintiffs as ordinary and necessary business expenses under Section 162 of the Internal Revenue Code of 1954, that the plaintiffs should recover judgment for $9,222.62 plus interest from April 15, 1958, at the rate of 6 per cent per annum and for their costs.

There was also an agreement respecting the amounts involved in Count II in case there was a finding against the taxpayers and in favor of the defendant on Count I. It is concluded on this alternative issue that if the plaintiffs are not entitled to recover on Count I they are entitled to recover on Count II the sum of $4,161.17 plus interest from April 15, 1958, at the rate of 6 per cent per annum. This is based upon the conclusion that, properly interpreted under Missouri law, the special assessments were "other expenses connected with" the trust property under Item III of the will.

It is therefore

---

ment for giving effect to the long-continued practice which seems to me to have been apparent there.

"Another point may merit mention. The Court observed [308 U.S. at 42, 53, 60 S.Ct. at 55, 60] that 'the Government' was 'unable to determine which construction of the statute will be most advantageous to the Government in point of revenue collected,' and that 'The Government by taking no position confesses that it is unable to say how administrative need and convenience will best be served.' It did note, however, that the position of 'the Government' before it was the view of the Department of Justice, assumed only at the time of the case then before the Court and did not represent the position of the Treasury Department which, after all, is charged with the practical administration of the statute. Some of the difficulty in this field has come because of the freedom with which the Department of Justice has been allowed to attack or fail to defend Treasury practice. Cf. Surrey, Scope and Effect of Treasury Regulations under the Income, Estate and Gift Taxes (1940) 88 U. of Pa.L.Rev. 556, 575.) All such points are factors to be taken into account. But where the practice clearly appears, and where it has in fact been long-continued, it should be given effect in the interests of sound tax administration.[60] (60. The statement printed in fine type in the Internal Revenue Bulletin and the Cumulative Bulletin, that published rulings 'have none of the force or effect of law * * *' has not been overlooked; nor has the fact that it was relied on in Helvering v. New York Trust Co., 292 U.S. 455, 468 [54 S.Ct. 806, 78 L.Ed. 1361] (1934). Insofar as this emphasized the importance of variations in the facts between various cases, it is of course sound. But as a disclaimer of the consequence of actual established practice, it should have no more effect than a disclaimer by any person who acts, of the consequences of his acts. Bureau practice is Bureau practice, and when it clearly appears and has been long-continued, it should be given effect regardless of the form in which it appears.

"This view is supported squarely by the recent decisions in Helvering v. Oregon Mutual Life Ins. Co. [311 U.S. 267, 61 S.Ct. 207, 85 L.Ed. 180], Helvering v. Janney [311 U.S. 189, 61 S. Ct. 241, 85 L.Ed. 118], and Taft v. Helvering [311 U.S. 195, 61 S.Ct. 244, 85 L.Ed. 122], all decided Dec. 9, 1940, in all of which rulings and practice were relied on.) There should be no rule limiting the effect of administrative construction in all cases to formal regulations and Treasury Decisions."

3. Here taxpayers failed to claim the deduction, thereby overpaying their taxes. It would be an unlawful discrimination to deny the refund on the ground that taxpayers did not claim the allowable deduction on their original return. 1 Mertens, Law of Federal Income Taxation, § 3.25, pp. 58-59; Exchange Parts Co. of Fort Worth v. United States (Ct.Cl., 1960) 279 F.2d 251.

Ordered and adjudged that the plaintiffs have and recover upon Count I of their petition for refund the sum of $9,-222.62 plus interest at 6 per cent per annum from April 15, 1958, as allowed by law, and their costs herein.