Edwin O. **BOOKWALTER**, Appellant,

v.

Joseph H. and Frances R. **BRECKLEIN**,
Appellees.

No. 17897.

United States Court of Appeals
Eighth Circuit.

March 1, 1966.

Johnson, Circuit Judge, dissented.

Harry Marselli, Attorney, Tax Division, Washington, D. C. Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div., Lee A. Jackson, Harry Baum, and Robert A. Bernstein, Attorneys, Tax Division, Washington, D. C., and F. Russell Millin, U. S. Atty., Kansas City, Mo., and

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., on the brief, for appellant.

Russell W. Baker, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., George R. Haydon, Jr., of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for appellees.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

The question in this case is whether the taxpayer,[1] plaintiff-appellee herein, is entitled to refunds for tax deductions not previously taken by him in 1957, the taxable year involved, on the grounds that private letter rulings issued to other taxpayers in 1958 erroneously allowed such other taxpayers to take similar deductions. The said letter rulings were eventually revoked but were revoked prospectively rather than retroactively. The District Court, whose opinion is reported at 231 F.Supp. 404, allowed appellee to recover for years prior to the time the private letter rulings were revoked. We reverse.

The facts, which are not in dispute, are set forth in substantial detail in the District Court's opinion. We summarize only enough to provide an understanding of the problem.

Appellee, individually and as trustee under the will of Hugo Brecklein, deceased, owned certain tracts of real property in a business district in Kansas City, Missouri. Pursuant to a 1954 ordinance of the City of Kansas City, off-street parking facilities were constructed for the business district in which the appellee's property was located. Special assessments were levied against the appellee's property as a member of the benefit district. Under the terms of the Kansas City ordinance the assessments could be paid in one lump sum without interest or in five annual installments with 6% interest on the un-

paid balances. The appellee, individually and as trustee, paid his entire assessment bills on January 15, 1957. He did not deduct the assessment payments from either his own or the fiduciary income tax returns filed by him for the year 1957. The 1957 returns were filed on or before April 15, 1958. However, appellee, on November 21, 1958 and June 7, 1960, filed claims for refund based on a failure to take any deduction for the assessment payments. Further, on June 3, 1960, appellee as trustee filed an amended fiduciary return for 1957, claiming a deduction for the said paid assessments.

In 1958 the City of Bismarck, North Dakota, sought a ruling relating to the deductibility for income tax purposes of special assessments levied by that city against some 500 property owners with land located in and benefitted by parking improvement districts in Bismarck's central business area. Such deductions were made permissible in a May 21, 1958, letter sent to the Commissioners of the City of Bismarck by Dan J. Ferris, the Acting Director of the Tax Rulings Division (this will hereafter be referred to as the Bismarck letter). The Bismarck letter concluded as follows:

"Upon the basis of the information submitted, it is the conclusion of this office that the assessments described constitute allowable deductions by taxpayers engaged in a trade or business in the area involved as ordinary and necessary business expenses under section 162 of the Internal Revenue Code of 1954, provided the taxpayer can show that such payments are reasonable, bear a direct relationship to his business and are made with a reasonable expectation of a financial return commensurate with the amount paid.

"Since the question is a factual one, final determination will be made by the appropriate field office

---

1. The taxpayer's wife is a party to the action solely because she joined in filing the joint return. References herein will

thus only be made to the taxpayer, Joseph H. Brecklein.

after examination of the return of any taxpayer claiming the deduction."

The Bismarck letter was never published in the Internal Revenue Bulletin but it was picked up and published by the Commerce Clearing House, a private tax service. The Bismarck letter was revoked prospectively in an April 4, 1960, letter from Dana Latham, the Commissioner of Internal Revenue, to the Bismarck Commissioners. Pertinent letter parts of the revocation are as follows:

"Section 164(b) (5) of the 1954 Code provides that no deduction shall be allowed for taxes assessed against local benefits of a kind tending to increase the value of the property assessed except for so much of such taxes as is properly allocable to maintenance or interest charges, * * *.

"Section 1.164-4(a) of the Income Tax Regulations provides, in part, that so called taxes, more properly assessments, imposed because of and measured by some benefit inuring directly to the property against which the assessment is levied do not constitute an allowable deduction from gross income. A tax is considered assessed against local benefits when the property subject to tax is limited to property benefitted. Special assessments are not deductible, even though an incidental benefit may inure to the public welfare. * * * * * *

"Accordingly, it is now held that the assessments described in our letter of May 21, 1958, constitute assessments against local benefits of a kind tending to increase the value of the property assessed within the meaning of section 164(b) (5) of the 1954 Code, and are not deductible, for Federal income tax purposes, except for so much of such taxes as is properly allocable to maintenance or interest charges.

"The ruling dated May 21, 1958 is, therefore, modified accordingly.

"Pursuant to authority contained in section 7805(b) of the 1954 Code, this ruling will not be applicable to assessments paid or accrued for taxable years beginning prior to January 1, 1960."

The revocation of the Bismarck letter was published in the Internal Revenue Bulletin as Rev.Rul. 60–327, 1960–2, Cum. Bull. 65.

After the issuance, but before the revocation, of the Bismarck letter, a Bismarck type of ruling was sought by a partnership owning business rental property known as the Wirthman Building in Kansas City, Missouri. The Wirthman Building partners sought to deduct payments being made by them on their obligation under the same special assessment (for the proposed off-street parking improvement) as was levied against the appellee herein. The Wirthman partners, however, had elected to pay the assessment in annual payments rather than in one lump sum payment, as was true with appellee. The first installment paid during the 1958 fiscal year was capitalized by the Wirthman partners. In response to their request, the Wirthman partners were informed in a letter dated June 18, 1959, and signed by E. O. Bookwalter, the District Director of Internal Revenue for Kansas City, Missouri, and, the defendant-appellant herein, and Lester V. Lechliter, Chief of the Audit Division, (hereafter this will be referred to as the Wirthman determination letter) that in the future a deduction for the assessment payments would be allowed. In the Wirthman determination letter, it was stated:

"The purpose of the parking space in the Bismarck special ruling, and in your case, are [sic] similar. In both instances the basic purpose was to provide parking space for a particular commercial district and to advance the economic activity of the district. * * *

* * * * * *

"In view of the foregoing, it is the opinion of this office that the bene-

fit assessments paid for the cost and maintaining of parking lots in the 31st and Troost district are ordinary and necessary business expenses. This opinion is subject, however, to any final determination, after examination of returns already filed, of whether such payments are reasonable, bear a direct relationship to your office building business, and were made with a reasonable expectation of a financial return commensurate with the amount paid."

For the fiscal years ending in 1959 and 1960, the Wirthman partners deducted the installments paid as ordinary and necessary business expenses pursuant to the Wirthman determination letter. However, the Wirthman determination letter was revoked "henceforth" in a letter, dated January 12, 1961, sent to the Wirthman partners by Mr. Lechliter. That letter stated in pertinent part:

"The opinion expressed in our letter was predicated upon a ruling issued by the Tax Rulings Division of the National Office covering similar assessments by the City of Bismarck, North Dakota. In that ruling, it was held (subject to a factual determination to the contrary) that the assessments appeared to be allowable as business expense under Section 162 of the Internal Revenue Code of 1954.

"Further consideration has been given this matter, and it is concluded that the assessments are for local benefits of a kind tending to increase the value of the property assessed. Under the provisions of Section 164(b) (5) of the Internal Revenue Code of 1954 and the applicable regulations, assessments of this type are neither deductible for income tax purposes as a tax or as a business expense. See Rev.Rul. 60–327, Internal Revenue Bulletin 1960–42, page 12, dated October 17, 1960.

"In view of the foregoing, our letter dated June 18, 1959, no longer reflects the position of this office. Accordingly, no deductions should be claimed for the special assessments referred to above in the returns filed henceforth by the partnership."

Following the prospective repudiations of the Bismarck letter and the Wirthman determination letter, appellee, on March 23, 1961, filed suit to recover an overpayment of taxes for 1957 resulting from a failure to deduct the benefit district assessments paid by him in one lump sum in 1957. After an evidentiary hearing, the District Court entered judgment for appellee, holding at p. 411 of 231 F.Supp. that the taxpayer was

"* * * entitled as a matter of law to equality of treatment with the 500 Bismarck taxpayers, the Wirthman partners, and any others who were accorded the benefit of the Commissioner's modification provision of no retroactive application of the modification ruling of April 4, 1960. Cases supporting this view are Exchange Parts Co. of Fort Worth v. United States (Ct.Cl., 1960) 279 F.2d 251 [150 Ct.Cl. 538]; Connecticut Railway & Lighting Co. v. United States (Ct. Cl., 1956) 142 F.Supp. 907 [135 Ct.Cl. 650]; City Loan & Savings Co. v. United States (N.D.Ohio, 1959) 177 F.Supp. 843, aff'd in (C. A. 6) 287 F.2d 612."

 The authority for making the revocation of the Bismarck and Wirthman letters prospective only is derived from 26 U.S.C.A. § 7805(b), wherein it is provided:

"(b) Retroactivity of regulations or rulings.—The Secretary [of the Treasury] or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect."

Appellee argues that:

"The Unlawful Discrimination Between Similarly-Situated Taxpayers, As Found by the District Court,

Was Such That the Judgment of the District Court Was Not Erroneous."

We do not agree. Ordinarily, the Commissioner of Internal Revenue or his duly authorized subordinates act within their power when revoking an erroneous private ruling with or without retroactive effect. See, Dixon v. United States, 1965, 381 U.S. 68, 72–73, 80, 85 S.Ct. 1301, 14 L.Ed.2d 223; Automobile Club of Michigan v. Commissioner, 1957, 353 U.S. 180, 183–184, 77 S.Ct. 707, 1 L.Ed.2d 46, rehearing denied, 353 U.S. 989, 77 S.Ct. 1279, 1 L.Ed.2d 1147, and the cases cited therein at f. n. 7, page 183, 77 S.Ct. 707. The evidence does not show that the appellee herein is being treated any worse or any differently from other taxpayers in his position who did not request or receive private letter rulings. Taxpayers without rulings are entitled only to be taxed the same as other taxpayers without rulings. See, e. g., Bornstein v. United States, Ct.Cl., 1965, 345 F.2d 558, 563–564; Weller v. Commissioner, 3 Cir., 1959, 270 F.2d 294, 298–299, certiorari denied, 364 U.S. 908, 81 S.Ct. 269, 5 L.Ed.2d 223; Goodstein v. Commissioner, 1 Cir., 1959, 267 F.2d 127, 132.

■ The fact that the private Bismarck letter was published by the Commerce Clearing House is not of decisive consequence. In *Goodstein*, supra, the taxpayer had seen other private but officially unpublished rulings and this factor was not enough to allow him (and, inferentially, all other taxpayers in his position) to rely on the said private rulings. As a practical matter, officials of the Internal Revenue Service are themselves not bound for precedent purposes by rulings or decisions not officially published. This fact is not unknown to the public since the policy of the Internal Revenue Service is set out in the introduction to the Internal Revenue Bulletins. See, e. g., 1960–2 Cum.Bull. 1. See, also, Helvering v. New York Trust Co., 1934, 292 U.S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361. In any event, the appellee did not rely either on the Bismarck letter or the Wirthman deter-

mination letter for he had paid his taxes on the assessment prior to when those letters were issued. There is no showing that appellee ever incurred expense or arranged his affairs in reliance on the Bismarck or Wirthman determinations. Even if such reliance had been shown, this is not necessarily decisive. See, Dixon v. United States, supra, at pages 72–73 of 381 U.S., 85 S.Ct. 1301.

■ Certain cases relied on by the court below and by the appellee in his brief are inapposite to the instant situation. Each case must be viewed on its facts to determine if the Commissioner has abused his discretion under 26 U.S. C.A. § 7805(b). Dixon v. United States, supra, at page 76 of 381 U.S., 85 S.Ct. 1301. We will deal with these cases individually below.

International Business Machines Corp. v. United States, Ct.Cl., 1965, 343 F.2d 914, certiorari denied, 86 S.Ct. 647, (hereafter referred to as the *I.B.M.* case), a three to one decision, involved two competitors, I.B.M. and Remington Rand, in the manufacturing, selling and leasing of large electronic computer systems. On April 13, 1955, Remington requested a ruling from the Commissioner of Internal Revenue to permit it to avoid existing tax liabilities arising out of the sale and rental of its computers. A favorable ruling was issued by the Commissioner in a telegram sent to Remington on April 15, 1955. On July 13, 1955, I.B.M., having learned of the Remington ruling, sought a similar ruling on its sale and leasing of comparable computers. I.B.M.'s letter to the Commissioner was marked "Urgent! Please Expedite" and closed as follows:

"In view of the extreme urgency of this matter, your immediate ruling, wire collect, is respectfully requested." 343 F.2d at 916.

I.B.M.'s request was not acted upon for over two years, and then in a negative manner. Both I.B.M. (on July 29, 1955) and Remington (in September 1955) also sought refunds for taxes paid on the sale and leasing of computers in the past. I.B.M.'s claim covered the period from

June 1, 1951, to May 31, 1955, and Remington's from January 1, 1952, to April 30, 1955. Remington's refund was allowed in July of 1956. I.B.M.'s refund claim, however, was rejected. The favorable tax ruling as to Remington was finally revoked prospectively as of February 1, 1958. In other words, Remington enjoyed six years of paying no tax on the selling and leasing of its computers, while I.B.M. did not share in such advantages for the selling and leasing of an almost identical product, even though both companies made similar requests of the Commissioner. This amounted to a comparative loss of over $13,000,000 to I.B.M. The Court of Claims allowed I.B.M. to recover the taxes paid by it on income derived from the rental and sale of computers for the period that Remington was not subjected to the tax.

Clearly, the facts of the *I.B.M.* case are entirely different from those in the instant situation. In *I.B.M.* there are clear and uncontradicted indications that the Commissioner abused his discretion in granting Remington tax-free treatment to the detriment of I.B.M. Unlike the instant appeal, the *I.B.M.* case involved a situation where one competitor was being favored unjustifiably over the only other competitor in the computer industry. Thus, the only members of the only logical class therein—the computer industry—were being treated in exactly opposite ways to the great detriment of I.B.M. Herein the situation is entirely different since appellee was treated no differently from many other similarly situated taxpayers who also had not sought rulings. In *I.B.M.* no reason was shown as to why Remington was not taxed retroactively. Here rational explanations were set forth as to why the Wirthman partners were not taxed retroactively—e. g., Mr. Jack U. Hiatt, a group supervisor for the Field Audit Branch of the Internal Revenue Service, testified that it was not feasible to collect a relatively small tax liability from a large number of taxpayers (the 22 members of the Wirthman partnership) lo-

cated in different collection districts. There is a great contrast between the relatively small amounts involved herein and the $13,000,000 involved in *I.B.M.* Furthermore, there was a much greater reliance factor in *I.B.M.* since I.B.M. was, at the time it was paying the disputed taxes, aware of the ruling made to Remington and within three months after the private ruling to Remington had made an urgent request for a similar ruling. Herein appellee paid his assessment *before* either the Bismarck or Wirthman determination letters were issued.

In *I.B.M.* Judge Davis, writing for the three-man majority, stated in 343 F.2d at 920, 921 and 923:

"Implicit, too, in the Congressional award of discretion to the [Internal Revenue] Service, through Section 7805(b), is the power as well as the *obligation to consider the totality of the circumstances surrounding the handing down of a ruling—including the comparative or differential effect on the other taxpayers in the same class. 'The Commissioner cannot tax one and not tax another without some rational basis for the difference.'* United States v. Kaiser, 363 U.S. 299, 308, 80 S.Ct. 1204, 1210, 4 L.Ed.2d 1233 (1960) (Frankfurter, J., concurring). This factor has come to be recognized as central to the administration of the section. See Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 185–186, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); Exchange Parts Co. v. United States, 279 F.2d 251, 254, 150 Ct.Cl. 538, 543 (1960); Connecticut Ry. & Lighting Co. v. United States, 142 F.Supp. 907, 908–909, 135 Ct.Cl. 650, 653–654 (1956); Wolinsky v. United States, 271 F.2d 865, 868 (C.A. 2, 1959); Weller v. Commissioner of Internal Revenue, 270 F.2d 294, 299 (C.A. 3, 1959), cert. denied, 364 U.S. 908, 81 S.Ct. 269, 52 L.Ed.2d [sic] 223 (1960); Goodstein v. Commissioner of In-

ternal Revenue, 267 F.2d 127, 132 (C.A. 1, 1959); City Loan & Savings Co. v. United States, 177 F. Supp. 843, 851 (N.D.Ohio, 1959), aff'd, 287 F.2d 612, 616 (C.A. 6, 1961). Equality of treatment is so dominant in our understanding of justice that discretion, where it is allowed a role, must pay the strictest heed.

\* \* \* \* \* \*

" \* \* \* *When we examine the agreed facts,* we cannot escape holding that there was a clear abuse, that the circumstances compelled the Service to confine its ruling (when it was finally given) to the future period for which Remington Rand's computers were to be held taxable. \* \* \*

\* \* \* \* \* \*

"*This history* exposes a manifest and unjustifiable discrimination against the taxpayer." (Emphasis supplied.)

As is apparent from the italicized portions of the above quotation, the Court of Claims was limiting itself in *I.B.M.* to the "totality of the circumstances" there involved. That *I.B.M.* was not intended to be a blanket ruling is clearly evidenced in two later cases decided by the Court of Claims. Those decisions are Knetsch v. United States, Ct.Cl., 1965, 348 F.2d 932, certiorari denied 86 S.Ct. 1221, and Bornstein v. United States, supra. In Knetsch, that court stated in f. n. 14 at page 940 of 348 F.2d:

"As the court pointed out in *Bornstein,* supra, *our decision in International Business Machines Corp. v. United States,* Ct.Cl. 343 F.2d 914, decided April 16, 1965, rested in section 7805(b) of the Internal Revenue Code, of 1954, and *was based on the court's evaluation of the particular circumstances in that case.*" (Emphasis supplied.)

In *Bornstein,* the Court of Claims stated in f. n. 2 at page 564 of 345 F.2d:

"There are also controlling factual differences between these cases [*Bornstein*] and International Business Machines Corp. v. United States, Ct.Cl. April 16, 1965, 343 F.2d 914. In that case the court applied Section 7805(b) of the Internal Revenue Code of 1954 in behalf of a taxpayer who had made prompt application to obtain a private ruling to the same effect as a ruling issued to another taxpayer, which manufactured and sold business machines that were similar in all material respects to the machines manufactured by plaintiff. *In these cases, none of the taxpayers nor the corporations in which they are shareholders asked for rulings.*" (Emphasis supplied.)

Herein, as in *Bornstein,* the appellee had not requested a ruling prior to paying his assessment and was clearly not discriminated against in the manner that I.B.M. was in the *I.B.M.* case. In *I.B.M.* the evidence was very strong that the Commissioner abused his discretion under 26 U.S.C.A. § 7805(b) but, under the facts of the instant case, the evidence is at least just as strong that there was no abuse of administrative discretion in prospectively withdrawing the Bismarck and Wirthman letters.

The other authorities relied on by appellees—i. e., City Loan & Savings Co. v. United States, N.D.Ohio, 1959, 177 F.Supp. 843, aff'd 6 Cir., 1961, 287 F.2d 612; Exchange Parts Co. of Fort Worth v. United States, 1960, 279 F.2d 251, 150 Ct.Cl. 538; Connecticut Ry. & Lighting Co. v. United States, 1956, 142 F.Supp. 907, 135 Ct.Cl. 538—are also of no avail to the appellee herein. In *Exchange Parts Co.* and *Connecticut Ry. & Lighting Co.,* as pointed out in *Bornstein,* supra, " \* \* \* this court [the Court of Claims] held that it was an abuse of discretion for the Commissioner to apply his ruling retroactively, *solely* on the basis that plaintiffs had paid the taxes in question." (Emphasis supplied.) 345 F.2d at 565. Herein, as we have already noted and as the record clearly indicates, the Commissioner's decision was based on rational administrative considerations and was not intended to be nor actually

was discriminatory to appellee in regard to others in his situation—i. e., those who had not desired to nor actually did not receive private rulings prior to paying taxes on the assessments. In the *City Loan & Savings Co.* case there was a strong reliance factor not present herein since there the Commissioner, after some fourteen years, had attempted to retroactively revoke as to the taxpayer there involved his (the Commissioner's) official published acquiescence in a certain Tax Court case previously relied on by the taxpayer.

■ We would not be remiss to point out that a favorable ruling to appellee herein could open the proverbial floodgates of litigation as suits could feasibly be brought by all other similarly situated taxpayers who did not deduct special assessments from their returns during the years in question. Not allowing the Commissioner some proper discretion in prospectively or retroactively revoking private rulings could cause the elimination of private letter rulings and any and all benefits to be derived therefrom. Private letter rulings are issued to certain private parties and are not intended to be relied on by the general public as a whole. It is only when the Commissioner abuses his discretion under 26 U.S.C.A. § 7805(b) that remedial action should be taken. The instant case is no such situation.

■ We also note that to allow appellee to recover herein would arguably prejudice other taxpayers—e. g., the Wirthman partners—since appellee could deduct his entire assessment, whereas other taxpayers could deduct only that portion paid prior to the revocation of the private letter rulings. The shoe would then be on the other foot and appellee would have a windfall merely because he chose to pay his entire assessment in one lump sum. This could give rise to even more undesirable litigation. In the absence of cogent reasons to the contrary, no court should overturn a discretionary ruling by the Commissioner under 26 U.S.C.A. § 7805(b) which could lead to wholesale and time-consuming litigation. As already noted, such cogent reasons are not present herein.

We reverse and remand for further proceedings not inconsistent with the foregoing.

JOHNSEN, Circuit Judge (dissenting).

I believe that Judge Becker was right in his decision, 231 F.Supp. 404, and I would affirm the judgment.

It seems to me that within legal realities the City of Bismarck letter necessarily constituted more than a mere private-letter ruling. It was not a communication made to some taxpayer as a ruling on his personal situation. It was an expression engaged in generally to the officials of a city as to the tax situation which would be occasioned to all those under a municipal improvement project, of commercial relationship, for meeting the city's downtown parking problem. Thus it was a ruling which from its nature and its scope obviously would be a matter of general municipal interest, public communication, class significance and unindividualized taxpayer application. In the case of the immediate project, the record shows that, up to the time of its non-retroactive revocation, the ruling had operated for the benefit of 500 taxpayers as a class and not on an individual-situation basis.

It further seems to me that, in the similar attempts which were then being made by municipalities throughout the country to deal with their parking problem, the ruling reasonably could be expected to be so publicized—which here occurred by the reporting of it in Commerce Clearing House Tax Service and other regular tax services—as to come to be given natural application to other such identical projects. Certainly the Commissioner could not, upon request, have refused to accord the same tax-deduction right to those under an identical project, while he permitted his Bismarck ruling to remain in effect. "The Commissioner cannot tax one and not tax another without some rational basis for the difference." *United States v. Kaiser,* 363 U.S. 299, 308, 80 S.Ct. 1204, 1210, 4

L.Ed.2d 1233 (1960) [concurring opinion of Mr. Justice Frankfurter]. He must accord the same tax treatment to all those of an identical class, i. e., those who are without some rational basis of difference in their situation. And this requirement of equality of treatment has application to the exercise of the Commissioner's power as to retroactivity under 26 U.S.C.A. (I.R.C.1954) § 7805(b) in relation to such rulings or regulations as may be engaged in by him. International Business Machines Corp. v. United States, 343 F.2d 914, 920 (Ct.Cl.1965) [cert. den. 86 S.Ct. 647] and cases cited. "For all tax rulings, it is important that there be like treatment to those who should be dealt with on the same basis." Id., 343 F.2d at p. 923.

As indicated, it seems to me that the Bismarck ruling was of such administrative character, operational scope and general-class application as not in Commissioner practice to have the status of conventional, private-letter or "individualized taxpayer's rulings".[1] On these realities, the fact that the ruling was not published in the Internal Revenue Bulletin would not, I think, be controlling of its legal aspect and significance. (See Judge Becker's opinion, 231 F.Supp. at 412, and the footnote quotation contained therein from Dean Griswold's article in 54 Harvard L.Rev. 398, 417–419.) And if the ruling thus was one of general legal scope, so that the taxpayer here was entitled as a matter of law to claim the benefit thereof on the basis of identical project and deduction situation, then I can see no possible question as to his right to recover. He had, within the time allowed by statute, filed an amended return, made deduction of the project assessments paid by him, and filed claim for refund, so that he has met all the requirements for maintaining a suit under § 7422 to get back taxes erroneously or excessively paid.

But even if the Bismarck letter were to be regarded as a mere private-letter ruling, I think the taxpayer here would still be entitled to recover in the circumstances involved. So long as the Bismarck letter continued to have tax operation in favor of those under that project, he would have been entitled to demand and receive a similar private-letter ruling, or in any event not to be denied the same benefits, as to the identical project and situation involved as to him. The Commissioner could not by refusing to issue such a ruling, or by engaging in one contrary to the deductibility being accorded those in the Bismarck project, foreclose him of the right to claim and receive equal taxpayer treatment.

Where such equality of treatment was demanded by the taxpayer, while the Bismarck ruling remained unrevoked and while it was still operating to confer tax benefits, there can be no question, I think, but that he would be entitled to correction in the courts of the inequality involved against him. If he had not yet paid the taxes, he would be entitled to litigate the question in the Tax Court. If, as here, he had paid the taxes, he would, within the coordinate scheme of the statute for the asserting of tax rights, be entitled to sue in the District Court for refund after claim had been filed.

Here such a claim for refund in relation to the assessments paid is shown by the record to have been initially filed in 1958, within a few months after the taxpayer's 1957 return was made, and almost two years before the Bismarck ruling was revoked. The taxpayer later filed an amended return and made a repeated claim for refund in relation thereto, but this, however, was not done until after the Bismarck ruling was revoked. Assuming, arguendo, that a taxpayer, in an identical situation as one under the private-letter ruling, is unable, for the first time, after such ruling has been revoked, to make demand for equal treatment as to the period during which the ruling was permitted to operate, that

---

[1]. Language of Judge Goodrich in Lesavoy Foundation v. Commissioner, 238 F.2d 589, 591 (3 Cir., 1956).

question presents no difficulty here, since, as indicated, a claim was made, in effect calling upon the Commissioner to accord equal treatment, while the Bismarck ruling was still operative.

Under neither of the theories which I have discussed, do I regard it as of any materiality that the taxpayer had paid his taxes before the Bismarck letter was issued, or that in making such payment he was not relying on the Bismarck letter as a basis for obtaining recovery of such payment. Under § 7422(b), protest is expressly made unnecessary in the payment of taxes as a basis for recovery right. Further, neither under the Bismarck project nor under the project involved as to the taxpayer here could the payment of taxes have any possible relationship, either legal or equitable, to the Commissioner's ruling, since the taxes were owed and were collectible against the property irrespective of whether they were or were not permitted to be federally deductible. Incidentally, it may be added also that there is suggestion in the printed record (p. 70) that assessment under the Bismarck project had been made before the time of the Commissioner's letter.

Finally, I think it should be noted that the District Court was not called upon to consider whether the taxpayer ought to be permitted to recover in relation to the full amount of the assessments which he had paid, or only those which he would have been called upon to pay on an installment basis up to the time of the Commissioner's revocation. It was stipulated in the pretrial conference that if the taxpayer was entitled to recover, the judgment should be for the amount in which it was entered by the District Court. Here, too, it may incidentally be observed that the record shows that there were some under the Bismarck project who, similarly as the taxpayer here, had paid their assessments in full, and who presumably were allowed to make deduction upon the same basis as the taxpayer was awarded recovery here.

Repeating—I believe that the judgment is entitled to be affirmed.