Joseph H. and Frances R. BRECKLEIN,
Plaintiffs,

v.

Edwin O. BOOKWALTER, Defendant.

Civ. A. No. 13236-3.

United States District Court,
W. D. Missouri, W. D.

March 26, 1970.

As Amended May 26, 1970.

Samuel Molby, for Watson, Ess, Marshall & Enggas, Kansas City, Mo., for plaintiffs.

Elliott Kajan, Trial Division, Internal Revenue Service, Washington, D. C., for defendant.

## COUNT I

AMENDED JUDGMENT FOR DEFENDANT ON COUNT I; JUDGMENT FOR PLAINTIFFS ON COUNT II

BECKER, Chief Judge.

This income tax refund case was originally decided in favor of the taxpayer in this trial court. That original decision in favor of the taxpayer was then considered sound for the reasons given in Brecklein v. Bookwalter (W.D. Mo.) 231 F.Supp. 404. From the original judgment the Government appealed.

The original decision of this Court was reversed and remanded. Brecklein v. Bookwalter (C.A. 8) 357 F.2d 78. Judge Harvey M. Johnsen, a member of the panel of the Court of Appeals, vigorously dissented from the judgment of reversal. 357 F.2d 78, l. c. 85–87. Since the judgment of the Court of Appeals reversing the case was not final, a petition for certiorari by the plaintiffs was not in order. Nevertheless, in view of this judgment the basic question on which the original judgment of this Court in favor of the taxpayer was rendered remains open for further review, at least in the Supreme Court of the United States. This Court is precluded from further consideration of the question by the mandate of the Court of Appeals reversing the original judgment. In other words, in the language of a distinguished district judge with a sense of humor, this Court has presently been convinced *vi et armis* that the majority of the Court of Appeals has correctly stated the law in the opinion reversing the original judgment. So the mandate of the Court of Appeals was implemented by a jury trial on the merits of the tax law questions involved without reference to the principles on which the original reversed judgment was based.

On remand this case involved the question whether tax assessments for special benefits of offstreet parking facilities are deductible for income tax purposes.

After remand of this case to this Court, it was referred to a jury for special findings on the following two interrogatories:

(1) "Have the plaintiffs proved by a preponderance of the evidence that all the special assessments against local benefits evidenced by tax bills numbered 77, 78, and 79, totalling $19,429.30, were not paid for local benefits of a kind tending to increase the value of any of the property of plaintiffs against which assessments were made? (Answer: No)

(2) "Have the plaintiffs provided by the preponderance of evidence that all of the special assessments against local benefits evidenced by tax bills numbered 77, 78, and 79, totalling $19,429.30, were ordinary and necessary expenses paid either

(1) in carrying on a trade or business, or

(2) for the management, conservation or maintenance of property held for the production of income?" (Answer: Yes)

The jury answered the first interrogatory in the negative and the second interrogatory in the affirmative as indicated above. Both parties now move for entry of judgment in their favor. It is the contention of the Government that "an expenditure paid for local benefits of a kind tending to increase the value of any property of plaintiffs against which the assessments were made are not deductible as a tax *in any event,* under former Section 164(b) (5) I.R.C."

■ The Government further contends the expenditure is not deductible under former Section 164(b) (5) (now Section 164(c), Title 26, U.S.C.) which reads as follows:

"(c) *Deduction denied in case of certain taxes.*—No deduction shall be allowed for the following taxes:

(1) Taxes assessed against local benefits of a kind tending to increase the value of the property assessed; but this paragraph shall not prevent the deduction of so much of such taxes as is properly allocable to maintenance or interest charges."

Under this section, taxes assessed against local benefits which tend to increase the value of the property assessed are deductible only to the extent that they are allocable to maintenance or interest charges. Cf. Denver & Rio Grande Western Railroad Company v. C.I.R. (C.A. 10) 279 F.2d 368, 370. It is the primary contention of the Government that since the jury found that the amounts paid for the special assessment were for benefits which tended to increase the value of the property that they were necessarily capital expenditures and therefore not properly deductible. The Government relies on F. M. Hubbell Son & Co. v. Burnet (C.A. 8) 51 F.2d 644, cert. den. 284 U.S. 664, 52 S.Ct. 41, 76 L.Ed. 563, contending that it holds an expenditure which increases the value of property "necessarily infers that it is capital in nature." The *Hubbell* case does not support that construction.

The Government further points out that the "Internal Revenue Code of 1954, at Sections 161, 211 and 261, specifically provides that a capital expenditure may not be deducted in any event, even though the expenditure may otherwise qualify as an ordinary and necessary business expense." The finding of the jury, however, that the special assessments against local benefits evidenced by tax bills numbered 77, 78 and 79 were ordinary and necessary expenses paid either in carrying on a trade or business or maintaining property held for the production of income was necessarily a finding, under the instructions given, that the expenditure was not a capital expenditure. The following language was contained in Instruction Number C–14 given by the Court:

"And in determining whether the special assessments totaling $19,429.30 were ordinary and necessary business expenses paid either (1) in carrying on a trade or business, or (2) for the management, conservation or maintenance of property held for the production of income, you should first decide whether or not the payment of the $19,429.30 represented capital expenditures or ordinary and necessary expenses as defined herein. If you do find that the payment of that sum represented capital expenditures as defined herein, then you cannot find that they were ordinary and necessary expenses. On the other hand, if you find that the payment of that sum represented ordinary and necessary expenses you cannot find that the pay-

ment represented capital expenditures."

The jury found that the payment of the assessments were expenditures which tended to increase the value of the plaintiffs' property within the meaning of Section 164(c). They nevertheless were not nondeductible capital expenditures but rather were, as found by the jury, ordinary and necessary business expenses. For these reasons the Government's claim that the payments were capital expenditures cannot be sustained.

█ In other words, since the Court instructed the jury that the categories of "capital expenditures" and "ordinary and necessary business expenses" were mutually exclusive, the fact that the jury found the assessment to be an ordinary and necessary business expense eliminates any possibility that the assessment could be a nondeductible capital expenditure, even if it incidentally tended to increase the value of the property.

Next, plaintiffs contend that Section 164(c), *supra*, applies and the assessments made here must necessarily be held to be allocable to maintenance or interest charges, since the jury has found that it cannot have a capital expenditure. But it does not follow that all noncapital expenditures are expenditures for maintenance or interest within the meaning of Section 164(c) (formerly Section 164(b) (5)). No evidence was offered to show that any portion of the assessment was allocated to the payment of interest on any obligation.

So the question remains whether the plaintiffs have met the burden of showing that all or any portion of the assessment for special benefits was for maintenance, as that term is used in Section 164(c).

Treasury Regulation 1.164(b) (1) is applicable and reads as follows:

"Insofar as assessments against local benefits are made for the purpose of maintenance or repair or for the purpose of meeting interest charges, with respect to such benefits, they are deductible. In such cases the burden is on the taxpayer to show the allocation of the amounts assessed to the different purposes. If the allocation cannot be made, none of the amount so paid is deductible."

"Maintenance" is the act of maintaining. In respect to property, maintaining is holding or keeping in a particular state or condition. Webster's New International Dictionary, Second Edition, Unabridged, page 1484.

Throughout this litigation the plaintiffs have failed to make any effort to show that all or any part of the assessments was allocated to maintenance or repair of the offstreet parking property.

It is true that in interrogatory No. 2 in subparagraphs (1) and (2) the jury was permitted to find and did find that the special assessments were ordinary and necessary business expenses paid "either: (1) in carrying on a trade and business, or (2) for the management, conservation or maintenance of property held for production of income."

For many reasons the inclusion of subparagraph (2) in interrogatory two is an insufficient basis for finding all or any part of the expenditure to be for maintenance. These reasons include the following. The evidence would not support such a finding thereof if one should be implied from the jury's answer to the interrogatory. No attempt was made by the plaintiffs to produce any evidence that any portion of the assessments was allocated to maintenance of property. A review of the record makes this clear. It is true that there was testimony about maintaining income from the plaintiffs' property, but this is not the type of maintenance referred to.

Further, the property referred to in subparagraph (2) of interrogatory No. 2 was plaintiffs' business properties "held for production of income" not the offstreet parking facility. To qualify for deduction any sums allocated to maintenance would have to be allocated for maintenance of the offstreet parking facility. Cf. Denver & Rio Grande

Western Railroad Co. (C.A. 10) 279 F.2d 368.

At no time did the plaintiffs seek to secure an instruction or a finding of the jury relating to the allocation to maintenance issue. Their theory was that the entire assessment was deductible without reference to the allocation to maintenance issue. At this stage that issue is abandoned, if it ever was material under the circumstances of this case.

■ For the foregoing reasons plaintiffs cannot recover on Count I. Therefore, judgment for defendant must be entered on Count I.

### COUNT II

■ Because of the stipulation of the parties entered into previously, however, the plaintiffs must be allowed to recover on Count II. As noted in the prior report of this case in Brecklein v. Bookwalter, *supra*, 231 F.Supp. at 413:

> "The parties stipulated at a pretrial conference that in the event the expenditures in question were deductible by plaintiffs as ordinary and necsary business expenses under Section 162 of the Internal Revenue Code of 1954, that the plaintiffs should recover judgment for $9,222.62 plus interest from April 15, 1958, at the rate of 6 per cent per annum and for their costs.

> "There was also an agreement respecting the amounts involved in Count II in case there was a finding against the taxpayers and in favor of the defendant on Count I. It is concluded on this alternative issue that if the plaintiffs are not entitled to recover on Count I they are entitled to recover on Count II the sum of $4,161.17 plus interest from April 15, 1958, at the rate of 6 per cent per annum. This is based upon the conclusion that, properly interpreted under Missouri law, the special assessments were 'other expenses connected with' the trust property under Item III of the will."

■■ Respecting costs, it is readily apparent that the general rule that costs should be taxed in favor of the prevailing party would dictate that some division of the costs be made between the parties in this case. Under Section 2412 of Title 28, United States Code, costs may be allowed to the prevailing party against the Government "or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of [a civil action by or against the United States]." The costs shall not include the fees and expenses of attorneys but shall "be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation". In respect of the costs so described, in accordance with the prevailing party principle, it is concluded that ⅔ thereof should be taxed to the plaintiffs and ⅓ to defendant.

For the foregoing reasons, it is

Ordered and adjudged that the claim for refund and relief of plaintiffs be, and it is hereby, denied in respect of Count I. It is further

Ordered and adjudged that judgment be, and it is hereby, entered for plaintiffs and against defendants on Count II in the sum of $4,161.17 plus interest at 6% per annum from April 15, 1958. It is further

Ordered and adjudged that the costs herein be taxed ⅔ to plaintiffs and ⅓ to defendant.